M. R. MILLER, Appellee, v. C. F. HURBURGH, Appellant.

No. 40691.

MARCH 10, 1931.

REHEARING DENIED JUNE 20, 1931.

Theo. P. Eslick and Bradshaw, Schenk & Fowler, for appellee.

Clark, Byers, Hutchinson & Garber, for appellant.

EVANS, J.—Only fact questions are involved. No rulings of the court are involved; no question of law was contested in the trial below; there is no bill of exceptions. The judgment

was duly excepted to, and the one question presented is whether it has support in the evidence.

The oral contract involved was entered into in May, 1928. The defendant, Hurburgh, was a resident of Galesburg, Illinois, and was the owner of the Stratford Hotel in the city of Des Moines. He had previously listed it for sale with Knepper, a real estate agent in Des Moines. He was operating the hotel through a hired manager and such operation was unsatisfactory. The condition of the hotel and of its management was such that Knepper found it difficult to interest prospective purchasers therein. In conference between Knepper and Hurburgh it was decided to give a better appearance to the hotel and to change the management thereof for that purpose. Pursuant to this conference Knepper negotiated with Miller, who was at that time the hired manager of the Drake Hotel in the same city. The negotiations with Miller were largely conducted by Knepper. Hurburgh personally conferred thereon with Miller pending the negotiations and confirmed the final arrangement by telephone conversation. The oral arrangement entered into as testified to by Miller was in substance that Miller should take possession of the hotel; that he should renovate it and put it in attractive condition; that a five-year lease should be executed to him at $400 per month,—this lease to become the subject of sale to a prospective purchaser; that the rent for the first three months should be devoted to the expense of the renovation; that the furniture of the hotel, then contained therein, should be appraised to the plaintiff at $1500, payment of which was to be deferred until a sale should be accomplished; that when such sale was accomplished the consideration obtained for the furniture and good will should inure to the benefit of the plaintiff and that he should take the difference between such sale price and the $1500 appraisal. This margin was to represent plaintiff's interest or profit in the transaction. The plaintiff appears to have performed upon his part. In March, 1929, Knepper accomplished a sale. That is to say he procured a tenant, who accepted from Hurburgh a five-year lease and paid for the furniture and good will the sum of $5300. The contemplated five-year lease to Miller was never in fact executed. Miller therefore treats the later transaction as a sale of his constructive lease. The defendant treats it as the acquisition of a tenant for

the property and a purchaser for the good will and for the furniture. The contention of the defendant is that he did not sell the furniture to Miller; that the only arrangement between him and Miller was that Miller should enter into possession and fix up the property with an allowance of $1200 on the rent for the necessary expenditures of putting the property in attractive shape; that no other inducement was held out to Miller for his part in the transaction except the alleged cheapness in the rent. The point of view of the defendant is indicated by the following from his cross examination:

"What I wanted was to have somebody put it in shape whereby it could be sold and I could get a good responsible tenant in there. That is what I was talking to Mr. Miller about. I wanted somebody there that would help show it. Q. You figured then that your contract was this, that you were renting the building to Mr. Miller for $400 a month, that he was to make all the repairs and fix it up, the furniture and everything else, and for that you would allow him three months rent free. Is that what you understood the contract was? A. $1200.00 either in cash or rent. I talked to him both ways. That was the last conversation, except over the telephone, before he called me up and closed the deal."

The defendant filed a counterclaim for the unpaid rent still due him.

The court below found the contract to be as alleged by the plaintiff. It allowed the defendant's counterclaim and rendered judgment for the plaintiff for the balance of $1329.72.

The record presents a clear case of conflicting evidence. The judgment entered is clearly supported by the plaintiff's evidence. The credibility of the parties, as witnesses, was for the consideration of the lower court. The circumstances surrounding the parties when the contract was entered into, are more corroborative of the plaintiff than of the defendant. We find nothing in the record that would justify our interference with the judgment.

II. The defendant complains of the refusal of the lower court to grant him time to procure the attendance of a witness. The witness in question was Stratner, the new tenant. At the close of the evidence in the forenoon, counsel for de-

fendant made oral request of the court for time to procure the attendance of the witness, who was supposed to be at his hotel a block or two distant from the court house. The witness had not been in attendance at any time, though he had been notified by counsel that he might be needed and had promised to respond when called. Counsel sent a bailiff to call him, but the bailiff was unable to find him. The court ordered a recess for two hours. At the termination of that time counsel had not been able to find his witness. The court thereupon declared the evidence closed. The defendant excepted and objected to this order as an abuse of discretion on the part of the court. With the entry of such exception the record ended. No showing on the question of diligence or negligence was offered by defendant. Nor was there any showing as to how much delay would have been necessary in order for the defendant to get the witness. No subpoena had been issued. If counsel had promptly brought the witness later, within a brief time, and had then asked that the case be re-opened for his testimony, a somewhat different question would·be presented. In other words, the prompt production of the witness, even after the evidence was closed, would be a more appropriate ground of motion for a new trial in the court below than of a ground of reversal in this court. We see no reason for saying that what was actually done by the court was an abuse of discretion.

The judgment below is affirmed.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.