IN RE ESTATE OF OTIS E. ALLIS, SR.

STATE SAVINGS BANK of Council Bluffs, Executor, et al., Appellees; SAMUEL ALLIS, Appellant.

No. 43271.

June 19, 1936.

Richard C. Hunter, and John J. Hess, for appellant.

Baird & Baird, for appellee State Savings Bank of Council Bluffs.

Tinley, Mitchell, Ross & Everest, for appellee W. R. Allis.

Galvin, Byers & Sullivan, for appellee Oliver E. Allis.

HAMILTON, J.—On the 10th day of January, 1928, Otis E. Allis, Sr., made his will, by the terms of which he provided first for the payment of his debts and second:

"All the rest, residue and remainder of my property, both real and personal, and wheresoever situated, I wish divided between my children, by name as follows: Sadie Plumer, Oliver E. Allis, William R. Allis, Samuel Allis, Ina A. Saunders, Harriet

Anderson, Otis E. Allis, Jr., share and share alike, first deducting any advancement made to any of them during my lifetime, and any money or other property delivered to them during my lifetime to be considered as an advancement, such advancement to be deducted from their individual share.''

He nominated the State Savings Bank of Council Bluffs, Iowa, executor. On the 25th day of July, 1934, testator died. His will was duly admitted to probate on September 4, 1934, and the appointment of the aforesaid bank as executor was confirmed. It appears that the deceased and his wife, prior to the husband's death, had a joint safety deposit box, to which each of them had access, in the State Savings Bank in Council Bluffs, Iowa. On January 11, 1928 (the day after the will was prepared and signed), said Otis E. Allis executed a trust agreement, naming the State Savings Bank of Council Bluffs, Iowa, as trustee, and on January 16, 1928, an inventory of the contents of the safety deposit box of Otis E. Allis was then prepared and the contents of the box turned over to the trustee, including the notes listed in the inventory, which included some 15 notes signed by the son, Samuel Allis, bearing dates ranging from April 2, 1904, to February 26, 1915.

The lower court found that all these notes had been paid, except a note for $195.75, dated September 18, 1914, payable to Augusta Rasmussen and signed by Samuel Allis and Otis E. Allis, bearing an indorsement showing payment of this note by Otis E. Allis on December 22, 1914, and a note of $2,000 dated February 26, 1915, payable to Otis E. Allis and signed by Samuel Allis, which were held to be advancements and properly chargeable against the share of Samuel Allis in the estate of his father, and Samuel has appealed from this finding.

One W. S. Baird, vice president of said bank, was in charge of the trust department in 1928, when the bank took possession under the trust agreement of the notes, etc., belonging to said testator. On the 26th day of April, 1928, W. S. Baird wrote a letter to each of the children. Following the signature on Samuel's letter, under date of May 1, 1928, purports to be an acknowledgment signed by Otis E. Allis and witnessed by three witnesses, to the effect that his son, Samuel Allis, at that date owed him nothing. This letter and acknowledgment are on one sheet of paper and were introduced in evidence as an exhibit, and read as follows:

"Dear Sir: The State Savings Bank, as trustee for Otis E. Allis, Sr., is endeavoring to arrange his financial affairs, and we shall esteem it a favor if you will indicate the amount of indebtedness, if any, you owe Mr. Allis. We are sending this same letter to each of the several heirs. It is not expected that you pay these several sums at this time, but they would be eventually deducted from your share of the estate. An early reply will greatly oblige.

"Yours very truly,

"(Signed)  W. S. Baird.

"Council Bluffs, Iowa, May 1st, 1928.

"This is to certify, in regard to the above inquiry, that my son, Samuel Allis at this date owes me *nothing* and that I am in possession of full and complete knowledge of all money that I have given to him and of sums repaid to me by him.

"(Signed)  Otis E. Allis.

"Witnesses:

"R. B. Barnham
"J. E. Creager
"Dorothy E. Christensen."

Mr. Baird, the trust officer of the bank, was deceased at the time of the trial. Mr. R. B. Barnham, an officer of the bank, and Dorothy E. Christensen, an employee in the bank, two of the subscribing witnesses to this written acknowledgment of the father, testified in the case and identified this exhibit as having been signed by W. S. Baird and Otis E. Allis, and witnessed by the witnesses whose names are affixed thereto. The letter was typewritten. Likewise the acknowledgment signed by Otis E. Allis under date of May 1, 1928, below the signature to the letter was all in typewriting except the word "nothing" in the third line. This was written in with a pen, and the witnesses to the instrument said that the writing of the word "nothing" was in the handwriting of Mr. R. B. Barnham, who was at that time assistant cashier of the bank. It appears from the testimony that this word "nothing" was written in at the time the same was signed by Mr. Otis E. Allis, namely, on May 1, 1928. Barnham at the time of the trial was employed in the Farm Credit Administration in Omaha. These officials of the bank do not claim to have any recollection, independent of the record, of what took place at the time of this transaction on May 1, 1928.

Both of them testified to a knowledge of the signatures, and there is no dispute as to their testimony. Bertha Allis, wife of Sam, testified that between April 21 and May 1, 1928, her father-in-law, Otis E. Allis, was at their home in Omaha and that she overheard a conversation between her husband and his father, in which she took no part, she being at the time engaged in washing dishes in the kitchen, and in this conversation she heard some discussion with reference to the letter which had just been received by Samuel from Mr. Baird, and Sam asked his father about this letter, and about the notes. His father replied: "I believe all of these old notes that you have paid me over —— years ago, were in that box that was in the bank. I don't know but I am sure they are there and I want to fix it so that you won't have to pay them again. We * * * will go to the bank and I will have that all straightened up." She testified that they did go to the bank.

■■■ This evidence was objected to because the witness was incompetent under section 11257, Code 1935, but there is no dispute in the record of her statement that "she took no part in the conversation" and therefore she was a competent witness as to the conversation she overheard between her husband and his father, and in which she took no part. Hart v. Hart, 181 Iowa 527, 164 N. W. 849.

The son, Samuel, testified that he paid all these notes, including the two notes in question. He further testified that he left all these notes with his father to show that they were paid, that the several notes were in his possession when he paid them, and he then gave them back to his father to show that they were stamped paid. There is no "paid" stamp on the $2,000 note, and it contains no indorsements; but the son testified positively that it had been paid. This is in substance all the evidence offered in the case.

■■■ The trial court dictated into the record his findings, in which he states that the evidence of Samuel Allis was not very convincing and that there was a variance between his evidence on direct examination and on cross-examination. He then discusses the legal significance in the use of the words, "debt, gift, and advancement," and says:

"The question for this court to determine is, did the deceased have in mind the absolute gift of this Exhibit 13, and of

this $2000.00 note, at the time he signed this, (referring to the statement signed by the father) or, did he have in mind that they were not debts but were advancements and to be treated as advancements?''

Likewise, the burden of appellees' argument to sustain the court's finding is addressed to these two points; that is, the unsatisfactory character of the testimony of Samuel, and the construction of the statement of the father, "that my son, Samuel Allis, at this date owes me nothing," contending that the old gentleman had in mind the technical use of the word "owes," and that he had in mind the distinction between advancements, gifts, and debts, and that he used the word "owes" advisedly, and that an advancement is not a debt, and that the father did not mean to convey the meaning that the notes in question had been paid, but rather that they were advancements and so considered; that his son was therefore not in any way indebted to him.

As to the first proposition it must be borne in mind that this transaction took place in 1928, more than seven years prior to this trial. Oral testimony as to what took place or what was said concerning matters of which there was no record would necessarily be more or less unsatisfactory, and where there is documentary proof, which is plain and unequivocal, of such an event so far in the past, and there is no other evidence to the contrary, the court is not justified in permitting assumption based on speculation or inference to overcome the solemn, written, duly witnessed documentary proof. Appellees point out no such inconsistency in Samuel's testimony as to warrant the court in totally rejecting it.

Appellees also argue that it is not probable that when the son and father went to the bank to straighten this matter out with the trustee, they would prepare a statement such as is affixed to the letter and leave the notes in the possession of the trustee; they would naturally take up the notes. This would seem to have much weight until we take into account the fact, which is undisputed, that some 15 different notes signed by Samuel and many of the notes signed by the other children, many of them paid, were with the father's papers and in the possession of him and by him turned over to the trustee along with the two notes in question. They were all left with the trus-

tec. The son's explanation of this was that the father retained possession that he might show that the same had been paid. It should be kept in mind that these notes were most of them payable to some one else as payee, rather than the testator. Some of the notes the father had signed as surety and the trial court in his finding says:

"The court further finds that the remaining notes, known as Exhibits 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14 and 15, represent transactions between Samuel Allis and Otis E. Allis which have been satisfied, the several amounts represented by said notes having been paid and the cancelled notes being retained by the decedent as evidence that the same are no longer obligations of Samuel Allis with the several banks as payees."

Therefore, there can be no significance attached to the fact that these other two notes were retained by the father. At the time the father visited the son in 1928, it was 13 years after these notes had been given. He said to the son, "I think these old notes are there among the papers in the bank box. We will go up and see. I don't want you to pay these over again." They were all outlawed, so far as their value as debts were concerned. The statute of limitations had run against every one of them. So these parties took this letter which Mr. Baird, the banker, had sent out to all the children for the purpose of ascertaining the true state of facts with reference to the great bundle of notes, and a conference was had with the banker, and at the conference this typewritten statement was written out and signed, and right on the letter itself is the solemn statement made May 1, 1928, 13 years after these notes were given and seven years before this trial, in these words: "This is to certify in regard to the above inquiry that my son, Samuel Allis, at this date owes me nothing, and that I am in possession of full and complete knowledge of all money that I have given to him and of sums repaid to me by him." Signed Otis E. Allis and witnessed by three witnesses, two of whom are still alive who verified the signature of Mr. Allis and testified that the word "nothing" was written in by the assistant cashier of the bank, and that it appeared to have been written in at the time Mr. Allis signed the statement. It is presumed that Mr. Allis, by the use of the words "owes me nothing," intended to convey the thought and meaning that would be ordinarily understood thereby, and we

can not presume that he, a layman, made use of the words in a technical sense, or that he was making a fine legal distinction concerning a matter about which the ordinary layman would have no technical knowledge, and by this construction wipe out this entire statement. In re Estate of Clifton, 207 Iowa 71, at page 77, 218 N. W. 926. We do not know what conversation was had between the father and his son, Samuel, and Mr. Baird, the banker. Samuel, of course, was not a competent witness, and the other two are deceased. As a result of that transaction we do have this record. There is no evidence that it was ever tampered with. There is nothing to discredit it. We are bound to accept it and to ascribe to it the ordinary meaning of the language used. There is nothing to indicate that there was any attempt to use the words otherwise.

We are inclined to hold that the court erred in his findings and that there is not sufficient evidence to support the judgment entered. This is not a case where the evidence is conflicting and the judgment has substantial support, the question of the credibility of the witnesses being for the consideration of the lower court, and hence this court would not be permitted to interfere with the judgment of the trial court. Miller v. Hurburgh, 212 Iowa 970, 235 N. W. 282. The decision of the court in this case, as already indicated, is directly contrary to the positive, uncontradicted documentary evidence.

The judgment of the trial court therefore must be, and is hereby, reversed.—Reversed.

DONEGAN, C. J., and ANDERSON, PARSONS, ALBERT, KINTZINGER, and RICHARDS, JJ., concur..