Betty Jane FOURNIER, as Administrator of the Estate of Brian Keith Webber, Deceased, and Betty Jane Fournier, in her own right as Mother of Brian Keith Webber, Deceased, Plaintiffs-Appellees/Cross-Appellants,

v.

FRATERNAL ORDER OF EAGLES, WATERLOO AERIE NO. 764, Defendant-Appellant,

Robert Anderson and Marjorie Anderson, d/b/a Airliner Lounge, Defendants-Appellees,

H & F, Inc., d/b/a The Hitching Post Bar, Defendant-Appellee,

Glenn Leroy Dubois, Defendant.

No. 84–425.

Court of Appeals of Iowa.

March 26, 1985.

See also 364 N.W.2d 218.

David J. Dutton and Cheryl L. Weber of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for defendant-appellant Eagles.

C.A. Frerichs of Fulton, Frerichs, Martin & Andres, Waterloo, for plaintiffs-appellees/cross-appellants.

James Walsh, Jr., and Gail D. Fokken of Clark, Butler, Walsh & McGiverin, Waterloo, for defendants-appellees Airliner.

Michael Figenshaw and William L. Chaplin of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for defendant-appellee Hitching Post.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Defendant dram shop appeals from a judgment in the amount of $187,644.62 in favor of plaintiff and codefendants.

On May 15, 1981, between 11:00 and 11:15 p.m. an automobile driven by defendant Glenn Dubois struck and killed Brian Webber (a/k/a Brian Fournier), the minor son of plaintiff Betty Fournier. Dubois admitted that he had been intoxicated at the time of the accident and pled guilty to involuntary manslaughter.

Plaintiff brought suit against Dubois and three dram shops, Fraternal Order of Eagles (Eagles), Robert and Marjorie Anderson d/b/a Airliner Lounge (Airliner), and H & F, Inc., d/b/a The Hitching Post (Hitching Post), alleging that each of the three taverns either served Dubois to the point of intoxication or served him after he was intoxicated in violation of Iowa Code section 123.92. Although Dubois testified at trial, he was not represented by counsel and made no appearance as a party defendant.

At the conclusion of plaintiff's case the trial court directed a verdict in favor of the Hitching Post on the ground that there was

insufficient evidence to generate a jury question on the issue of liability.

The jury returned a verdict in favor of plaintiff and the Airliner and against the Eagles and Dubois. Eagles and plaintiff filed motions for a new trial which were denied. Eagles appealed and plaintiff cross-appealed.

On appeal both plaintiff and Eagles argue: (1) the trial court erred in directing a verdict for the Hitching Post and in denying the motions for new trial on this ground; and (2) the trial court abused its discretion in refusing to hold the evidence open to allow plaintiff to call a toxicologist as a rebuttal witness. In addition, the Eagles claims that the jury verdict finding the Airliner was not liable was not supported by sufficient evidence. Plaintiff also maintains that the trial court erred in: (1) permitting the Airliner to argue that "intoxication" under the dram shop statute is not the same as "under the influence" as used in the motor vehicle statutes; and (2) in assessing interest on the judgment against Eagles and Dubois from the date of filing of the suit rather than from the date of the wrongful death.

Our review of this action at law is on assigned error. Iowa R.App.P. 4.

■ I. *Directed Verdict for the Hitching Post.* In ruling on a motion for directed verdict, the court views the evidence in the light most favorable to the party against whom the motion is made. Iowa R.App.P. 14(f)(2). The motion must be denied if there has been substantial evidence in support of each element of a plaintiff's cause of action. *Bietz v. Horak,* 271 N.W.2d 755, 757 (Iowa 1978). Even when the facts are uncontradicted a jury question exists if reasonable minds could draw differing inferences from those facts. Iowa R.App.P. 14(f)(17).

■ There was testimony that the accident occurred sometime after 10:30 p.m. and it was stipulated that the accident was reported at 11:16 p.m. Three witnesses testified that they saw Dubois in the Hitching Post on the night of the accident. Donna Epps testified that she arrived at the Hitching Post at approximately 10:00 p.m. and observed Dubois enter between 11:30 and 11:45. Norma Lenius stated that Dubois arrived at the Hitching Post around midnight. Finally, Michael Price testified that Dubois was in the bar for approximately twenty to thirty minutes at some point between 10:00 p.m. and 12:30 a.m. He could not pinpoint the time precisely. Dubois testified that he did not remember being at the Hitching Post at any time on the night of May 15.

Although a jury could possibly conclude from the testimony of Michael Price that Dubois was in the bar as early as 10:00 p.m., the overwhelming evidence was that Dubois was still at the Eagles until approximately 10:30 p.m. Dubois himself testified that he left the Eagles at 10:40 and drove to a friend's house. He was unable to remember whether the accident occurred on the trip out to his friend's or on the way back. Arthur Schwickerath testified that Dubois entered the Eagles between 10:00 and 10:30 and left between 10:30 and 11:00. Marilyn Owen testified that Dubois arrived at the Eagles between 9:30 and 10:00 and left approximately twenty to thirty minutes later. Robert Funk stated that he saw Dubois at the Eagles at 10:00 and that Dubois appeared to be preparing to leave at 10:30 although Funk could not say what time Dubois actually left. Charles Worroll testified that Dubois entered the Eagles at about 10:00 and left between 10:30 and 10:40.

Based on this evidence, the only rational conclusion is that Dubois left the Eagles, was involved in the accident, and stopped at the Hitching Post after the accident. Although the supreme court has held that a plaintiff injured by an intoxicated person need not show that the serving of intoxicating beverages was a proximate cause of the injury, nor must the plaintiff show that the liquor furnished by the defendant contributed to the intoxication where the patron is already intoxicated when served, *Walton v. Stokes,* 270 N.W.2d 627, 628–29 (Iowa 1978), we do not interpret this to

mean that a tavern operator who serves an intoxicated person could be held liable for injuries caused by that patron *prior* to his being served. Since there was insufficient evidence of Dubois's presence in the Hitching Post prior to the accident to create a question for the jury, the trial court properly directed a verdict in favor of the Hitching Post and did not abuse its discretion in denying the motions for new trial based on the directed verdict.

 II. *Refusal of Request to Keep Record Open.* The trial court has considerable discretion in directing the course of the trial. *Nichols v. Kirchner,* 241 Iowa 99, 106, 40 N.W.2d 13, 17 (1949). Discretionary rulings of the trial court are presumptively correct and will be disturbed on appeal only upon a clear showing of abuse of discretion. *Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.,* 326 N.W.2d 328, 334 (Iowa 1982). In *Miller v. Hurburgh,* 212 Iowa 970, 972–73, 235 N.W. 282, 283–84 (1931), the supreme court held it was not an abuse of discretion for the trial court to close the evidence over defendant's objection that he had another witness to present. The trial court granted defendant a two-hour recess, but defendant was unable to locate the witness. The supreme court refused to disturb the action of the trial court where the witness had not been subpoenaed, there was no showing of defendant's diligence in attempting to procure him, and there was no showing as to how much delay would have been necessary to find the witness. *Id.*

 In the present case the Airliner presented several witnesses who testified to the amount of alcohol consumed by Dubois at the Airliner. All of these witnesses stated they did not see any visible signs of intoxication when Dubois left the bar. Defendant Airliner rested at 12:30 p.m. on Friday. Plaintiff requested that the record be kept open until Monday morning to allow plaintiff to present rebuttal testimony by a toxicologist as to the level of intoxication of someone who had consumed the amount of alcohol consumed by Dubois at the Airliner. The trial court denied the request but indicated that plaintiff could present the witness Friday afternoon. Plaintiff was unable to do so since no toxicologist had been retained to testify.

We cannot say the trial court abused its discretion in refusing to delay the trial to allow plaintiff to consult and possibly retain an expert. Although plaintiff only requested an extension until Monday there was no guarantee that such a witness would be produced at that time. Furthermore, the issue of Dubois's intoxication was a major question in the case. In the exercise of due diligence plaintiff could have anticipated the need for such expert testimony and had the witness available.

III. *Closing Argument.* Although closing arguments were not reported, the record in this case indicates that the attorney for Airliner stated in closing argument that "intoxication" under the Iowa dram shop statute is not the same as "being under the influence" as set forth in the motor vehicle laws. Plaintiff objected to the statement and requested the court to instruct the jury that this was an incorrect statement of the law. The trial court refused to make any comment to the jury concerning the argument. Plaintiff argues that this constituted reversible error.

 The phrases "intoxicated" and "under the influence of intoxicants" mean essentially the same thing. *See State v. Davis,* 196 N.W.2d 885, 890 (Iowa 1972). However, not every irregularity should result in a reversal. *Baysinger v. Haney,* 261 Iowa 577, 155 N.W.2d 496, 499 (1968). After reviewing the entire record we cannot find sufficient prejudice to warrant a new trial. First, the closing argument was unreported. We do not have the advantage of the trial court of hearing the argument in context and weighing its probable impact on the jury. Therefore, we give more deference to the trial court's ruling. Second, the jury was properly instructed on the definition of "intoxication" under the dram shop statute and presumably applied that definition to determine Dubois's condition on the night of the accident. Finally, during the course of the trial the phrases

"intoxicated" and "under the influence" were used interchangeably by counsel and witnesses. We do not find that a misstatement by counsel on this issue in closing argument would have a sufficient impact on the jury to justify a new trial.

IV. *Verdict for the Airliner.* In evaluating the sufficiency of the evidence to support a verdict, we view the evidence in the light most favorable to the verdict. *Briggs Transportation Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978). There was conflicting evidence concerning the amount of alcohol and types of alcohol Dubois consumed while in the Airliner. Several witnesses testified that based on their observations Dubois was not intoxicated when he left the Airliner. Dubois, on cross-examination, was unable to say whether he was under the influence of alcohol at the Airliner. There was also evidence that Dubois ate a sandwich while in the Airliner. There was sufficient evidence from which the jury could determine that Dubois was not intoxicated when he left the Airliner and thus find that defendant not liable.

V. *Interest on the Judgment.* Plaintiff argues that the interest on the judgment should be computed from the date of decedent's death rather than from the date the suit was filed. Iowa Code section 535.3 provides that interest on judgments accrues from the date of the commencement of the action. Since the judgment in this case was rendered after January 1, 1981, the statute controls.

AFFIRMED.