**John H. VAN IPEREN and Shirley M. Van Iperen, Appellants,**

**v.**

**Edward L. VAN BRAMER, M.D., Liem-Som Oei, M.D. and St. Luke's Regional Medical Center, An Iowa Corporation, Appellees.**

No. 85–816.

Supreme Court of Iowa.

Aug. 20, 1986.

William E. Kunze, Spirit Lake, for appellants.

Marvin F. Heidman and John C. Gray of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellee Edward L. Van Bramer, M.D.

Maurice B. Nieland and Timothy S. Bottaro of Kindig, Beebe, Rawlings, Nieland, Probasco & Killinger, Sioux City, for appellee Liem-Som Oei, M.D.

Thomas J. Shomaker of Sodoro, Daly & Sodoro, Omaha, Nebraska, and Daniel C. Galvin of O'Brien, Galvin, Kuehl & Mullin, Sioux City, for appellee St. Luke's Regional Medical Center.

CARTER, Justice.

Plaintiffs, John H. Van Iperen and Shirley M. Van Iperen, appeal from judgments entered following a jury trial of a medical malpractice case. The district court directed a verdict in favor of the defendant, St. Luke's Regional Medical Center, at the conclusion of plaintiffs' evidence. The case was submitted to the jury against the defendants, Edward L. Van Bramer, M.D. and Liem-Som Oei, M.D., on theories of (a) failure to obtain the informed consent of plaintiff, John H. Van Iperen, with regard to the initiation of a program of drug therapy involving medications which had known adverse side effects, and (b) administering, prescribing, and combining those drugs in a manner not in accordance with accepted medical practice. Shirley M. Van Iperen's claim is for loss of spousal consortium. On the facts of the present case, the validity of that claim depends entirely upon the validity of her husband's malpractice claim. For convenience, the term plaintiff as used throughout this opinion will refer to John H. Van Iperen.

Following trial of these issues, the jury returned special verdicts finding that neither of the defendant doctors was negligent. Plaintiff appeals from the resulting judgment, asserting that the trial court erred in (a) not determining that the jury's verdict on the informed consent claim was against the great weight of the evidence, (b) withdrawing certain claims of negligence from consideration by the jury, (c) directing a verdict in favor of the defendant hospital, and (d) improperly allowing evidence that an associate of the plaintiff's expert medical witness had been convicted of a crime. We consider each of these issues separately and affirm the judgment of the district court.

For many years prior to 1981, plaintiff had suffered from Crohn's disease, a chronic illness which results in serious damage to the victim's intestinal tract. In plaintiff's case, the damage was sufficiently serious that all of his large intestine and much of his small intestine had been surgically removed by June, 1981. An ileostomy procedure allowed the remaining small intestine to drain into a bag outside the plaintiff's body. A segment of intestine approximately five inches in length remained attached to his rectal cavity. This was not connected to any other body organ and was sutured closed on the interior end.

When plaintiff was admitted to St. Luke's Regional Medical Center on June 1, 1981, an infection had developed in the area where this five-inch segment of intestine pressed against the bladder wall. An opening or "fistula" in the bladder wall had developed and had contaminated the normally sterile environment within the bladder. Two prior efforts to surgically correct the fistula had been unsuccessful.

At the time of the June hospitalization, plaintiff was attended by defendants Van Bramer and Oei. Dr. Van Bramer, a specialist in internal medicine and a certified diplomate of the American Board of Internal Medicine, was in charge of plaintiff's course of treatment. Dr. Oei is certified in nephrology, a subspecialty of internal medicine relating to kidney disease. He was consulted with regard to a recommended course of drug therapy for plaintiff's bladder infection. Dr. Van Bramer identified two separate ways of dealing with the bladder infection. One alternative was to attempt again to surgically close the fistula. Such surgery involved risks of damage to the bladder wall and permanent sterility. The second alternative involved daily application of a bacteria-killing rectal flush or rinse using a liquid solution of antibiotics injected through the rectal cavity into the five-inch intestinal segment adjacent to the infected bladder wall. Plaintiff, in consultation with defendant Van Bramer, elected to forego surgery and engage in the rectal flush program.

A solution of Neomycin and Kanamycin was prepared by defendant Oei as the antibiotic compound to be employed in plaintiff's treatment. This compound was considered by him to be a relatively dilute concentration of those drugs. The solution was prepared by mixing one gram of Neomycin and one gram of Kanamycin with fifty cubic centimeters of saline solution. Twenty to twenty-five cubic centimeters of this solution was to be administered directly into the area of the fistula.

Plaintiff was hospitalized in St. Luke's Medical Center from June 1 through July 2. Commencing on June 18, the prescribed rectal flush solution was administered two or three times daily. Its effect on plaintiff's bladder infection was monitored by Dr. Oei. Urinalysis indicated that the infection subsided after initiation of this treatment. Upon discharge from the hospital on July 2, plaintiff was directed to continue application of the rectal flush solution at home twice daily. Dr. Van Bramer continued to monitor his progress.

Plaintiff was subsequently hospitalized at the following times during 1981: August 20 through August 24; September 14 through September 17; and October 29 through November 7. On each of these occasions, the primary reason for the hospitalization was dehydration and electrolyte imbalance caused by the small amount of absorptive surface which remained in his gastrointestinal tract. Plaintiff continued to receive the rectal flush solution twice daily during these hospitalizations and as an outpatient between periods of hospitalization. Efforts to decrease the frequency of these applications resulted in a recurrence of the bladder infection.

During the October 29 hospitalization, plaintiff complained of ringing in his ears. Dr. Van Bramer believed this was due to the dehydration and electrolyte imbalance. This symptom subsided when plaintiff was given fluids intravenously. On November 14, 1981, plaintiff was hospitalized again for dehydration and electrolyte imbalance. At this time, his hospital record notes that

it [has become] apparent that the Kanamycin, Neomycin rectal installations that we are using to sterilize his fistula have gradually affected his hearing. [H]e began having bells and ringings, so we did a hearing test and the high frequencies have dropped off so prior to getting into trouble we are going to stop those.

Although use of the Neomycin and Kanamycin solution was discontinued in accordance with the foregoing directive, plaintiff's hearing loss worsened. By the time of trial, he was unable to discern sound levels below the intensity of a chain saw.

Neomycin and Kanamycin separately and in combination were known by defendants Van Bramer and Oei to have potential adverse side effects with regard to kidney damage and hearing loss. The evidence indicates that defendant Van Bramer did not inform the plaintiff of these side effects prior to initiation of the drug therapy. Dr. Oei, however, testified that he had advised plaintiff of both these potential side effects and obtained the latter's informed consent to proceed with the program of drug therapy which was thereafter undertaken.

Plaintiff offered expert medical testimony at the trial that, in order to comply with accepted medical practice, any administration of either Neomycin or Kanamycin to plaintiff should have been accompanied by (a) blood tests to determine whether there were excessive levels of absorption of the drugs and (b) periodic testing for early signs of hearing loss at high frequency levels. Testimony by the defendants and medical experts called in their behalf indicated that, under accepted medical practice, such testing was not necessary in administering the dilute concentrations of Neomycin and Kanamycin which were involved in treating the plaintiff. Other significant facts which bear upon our disposition of this appeal are stated and considered in our discussion of the legal issues which are presented.

## I. *Validity of Verdict as to Informed Consent.*

■ We first consider plaintiff's claim that the jury's finding in favor of defendants Van Bramer and Oei on the issue of informed consent is so contrary to the great weight of the evidence that he is entitled to a new trial on that issue. He asserts, correctly we believe, that on the present record no reason existed to withhold from him for therapeutic reasons any information material to his decision concerning the course of medical treatment to be pursued. Accordingly, he was entitled to disclosure of all relevant information relating to the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment. *See Cowman v. Hornaday*, 329 N.W.2d 422, 425 (Iowa 1983).

■ It appears without dispute that the defendant Van Bramer, in counseling the plaintiff with respect to whether surgery or drug therapy should be employed, discussed the risks of surgery with some particularity but only generally described the anticipated process with regard to drug therapy. Van Bramer left the task of informing plaintiff about the specifics of the proposed drug therapy to defendant Oei, who had undertaken the determination of the antibiotic drug components for the rectal wash solution. There is a factual dispute in the testimony between plaintiff and defendant Oei concerning whether the latter advised plaintiff concerning the potential for hearing loss. Dr. Oei testified that he advised plaintiff concerning risk of hearing loss associated with these drugs. Plaintiff disputes that this occurred. The trial court submitted the issue of informed consent to the jury. A special interrogatory was answered rejecting plaintiff's claim.

In arguing this issue on appeal, plaintiff asserts:

As mentioned ..., a factual dispute exists in this case over whether the plaintiff was warned at all. The jury decided this issue for the defendant, and accordingly plaintiff concedes ... that Dr. Oei

did indeed discuss the possibility of hearing loss with the plaintiff. [N]o one told the plaintiff about the risk of hearing loss before June 18. [U]nder *Cowman,* the plaintiff received the necessary warning too late.

June 18, to which plaintiff refers, was when he had a discussion with Dr. Oei prior to the first application of the rectal flush solution. The crux of plaintiff's argument is that he was entitled to the warning of potential adverse consequences from the drug therapy at the time he was consulting with defendant Van Bramer on whether to elect a surgical solution to his problem.

We do not believe that, in determining the informed consent issue, it is realistic to compartmentalize the decisions in the manner proposed by plaintiff. The jury could have found that defendant Van Bramer informed plaintiff to the best of his ability concerning the advantages and disadvantages of surgery as contrasted with drug therapy and left to Oei the burden of filling in the details concerning risks involved in specific drug therapy. Indeed, this division of responsibility was perhaps unavoidable in view of the fact that Oei was in charge of the selection of the drugs to be utilized. Viewed in this light, we believe the issue of informed consent was primarily a factual dispute, and the jury's resolution of that issue is supported by substantial evidence. Accordingly, the district court did not err in denying plaintiff's motion for new trial on the informed consent issue. *See Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850, 861 (Iowa 1973); *Lantz v. Cook,* 256 Iowa 409, 412, 127 N.W.2d 675, 677 (1964).

## II. *Withdrawal of Certain Negligence Claims from the Jury.*

■ We next consider plaintiff's assignment of error based on the trial court's withdrawal of two of the following three specifications of negligence from the jury's consideration:

[t]hat [d]efendants ... were negligent in the following respects:

. . . .

B. In administering, prescribing and combining the drugs neomycin and kanamycin for Plaintiff ... for a period from the 18th day of June, 1981 to the 23rd day of November, 1981 when the method of administering, prescribing, combining and the mixing of said drugs was not the accepted and recommended method of administration and combination by similar medical specialists and doctors in this locale.

C. In administering and prescribing the drugs kanamycin and neomycin for Plaintiff ... from a period of June, 1981 through November 23, 1981 without providing close clinical observation including audio metric testing before and during the extended therapy....

. . . .

F. In continuing to prescribe the drugs kanamycin and neomycin for Plaintiff ... after Plaintiff commenced complaining of ringing in his ears and in failing to perform audio metric testing at said time, despite said ringing being a primary diagnostic system indicating a toxic reaction in a patient....

Although the trial court submitted specification of negligence B for the jury's consideration, it refused to submit specifications C and F on the basis that there had been an insufficient showing of causation with respect to these claims.

In medical malpractice cases we have consistently held that, where common knowledge or everyday experience will not permit a lay jury to form an opinion as to causal connection between alleged acts of negligence and injury to the plaintiff, "causal connection is essentially a matter which must be foundationed upon expert evidence." *McCleeary v. Wirtz,* 222 N.W.2d 409, 413 (Iowa 1974); *accord Cronin v. Hagan,* 221 N.W.2d 748, 755 (Iowa 1974); *Barnes v. Bovenmyer,* 255 Iowa 220, 228–29, 122 N.W.2d 312, 317 (1963). The issue in the present case is not whether there was sufficient expert medical evidence establishing a causal connection between plaintiff's hearing loss and the administration of the drugs Neomycin and

Kanamycin. Defendant Van Bramer conceded in his testimony that one or both of these drugs most likely caused that condition. A broad claim of negligence with respect to the selection and utilization of these drugs was submitted to the jury under negligence specification B, previously quoted. We must decide whether there was sufficient expert testimony to support the additional claims of negligence embraced in specifications C and F. The district court determined that there was not and we agree.

With regard to negligence specification F, there is no evidence indicating that if the drugs had been discontinued when the ringing in plaintiff's ears first occurred in late October the amount of permanent hearing loss ultimately sustained would have been less. Any claim of negligence under specification F is fully subsumed within the broad claim submitted to the jury under specification B.

With regard to specification C, plaintiff's expert witness testified that audiometric testing should have been performed on the plaintiff before either Neomycin or Kanamycin was administered and should have been repeated at regular intervals during the time the drug therapy was ongoing in order to provide early warning of hearing loss. This claim, we believe, is also fully subsumed under specification B relating to the manner in which the drugs were administered. It was not error to fail to submit specification C as an independent ground of negligence. The record does not indicate that it was more likely than not that the proposed audiometric testing would have alerted plaintiff's doctors to the necessity of discontinuing application of the drugs before hearing loss became irreversible. Such a standard of probability is necessary in establishing the required causal relationship between negligence and injury.

Plaintiff also asserts that specification C should have been given to the jury based upon expert testimony concerning the necessity of periodically monitoring the levels of Neomycin and Kanamycin in the blood. The showing of causal connection between this omission and plaintiff's hearing loss is substantially weaker than the showing made with regard to audiometric testing and does not afford a basis for establishing a claim of error with respect to the withdrawal of specification C from the jury's consideration.

Plaintiff contends that in medical malpractice cases the rule stated in Restatement (Second) of Torts § 323 (1965) requires only a showing that a negligent act or omission "increases the risk of ... harm" to the plaintiff in order to generate a jury issue on the element of causation. We have examined the language of the Restatement section upon which plaintiff relies and the comments which accompany that section. The rule, as stated, provides liability "for physical harm *resulting from* [the] failure to exercise reasonable care to perform [the defendant's] undertaking." (Emphasis added.) The language utilized in this section does not suggest that traditional standards of causal relationship do not apply in determining whether harm has resulted from a defendant's act or omission. Indeed, illustration 1 under comment c of section 323 suggests the contrary. The district court did not err in failing to submit negligence specifications C and F for the consideration of the jury.

III. *Directed Verdict for the Defendant Hospital.*

Plaintiff also contends the trial court erred in directing a verdict in favor of the defendant St. Luke's Regional Medical Center at the conclusion of plaintiff's evidence. It bases this contention on the accreditation standards of the Joint Commission on the Accreditation of Hospitals which require that, within the limits of available resources, a hospital should provide drug monitoring services through its hospital pharmacy which include:

■ The maintenance of a medication record or drug profile for each patient, which is based on available drug history and current therapy and includes the name, age, and weight of the patient, the current diagnosis(es), the

current drug therapy, any drug allergies or sensitivities, and other pertinent information relating to the patient's drug regimen. . . .

■ A review of the patient's drug regimen for any potential interactions, interferences or incompatibilities, prior to dispensing drugs to the patient. Such irregularities must be resolved promptly with the prescribing practitioner, and, when appropriate, with notification of the nursing service and administration.

Plaintiff urges that the hospital's procedures were deficient and not in accordance with its accreditation standards because it had established no formal procedures for implementing the responsibilities of the hospital pharmacy to make independent evaluations of proposed drug therapy and to communicate recommendations to the patient and his doctors.

■ We do not believe the scope and application of the written accreditation standards upon which plaintiff relies are sufficiently clear that these documents are self-authenticating with respect to the required standard of care. Although we suggested in *Menzel v. Morse*, 362 N.W.2d 465, 471 (Iowa 1985) that hospital accreditation standards provide some evidence of the proper standard of care, the evidence presented in the present case is insufficient, without additional reliable interpretative data, to generate a jury issue on the claim made against the defendant hospital. We hold that the district court did not err in directing a verdict in favor of that defendant.

### IV. *Improper Cross-Examination of Plaintiff's Expert Witness.*

■ Finally, we consider the plaintiff's contention that he should be granted a new trial because of prejudice engendered when his expert medical witness was improperly questioned on cross-examination. These questions concerned whether another physician associated with the same consulting firm had been convicted of a crime. This cross-examination was, we believe, improper. Defendants' claims concerning the relevancy and materiality of this line of inquiry are not persuasive. The record shows no logical nexus between the alleged criminal act by this individual and the credibility or reputation of plaintiff's medical expert or the consulting firm with which he was associated.

■ Plaintiff's attempt to obtain reversal of the judgment based on this improper evidence is hampered by the circumstance that he failed to timely object to the question or to move to strike the answer. The record does not support his claim that there was a standing objection which protected him against defendants' use of this evidence. We have frequently stated that a party cannot complain of the receipt of evidence to which no timely objection was made without a reasonable excuse for not having objected. *See, e.g., Ferguson v. Stilwill*, 224 N.W.2d 11, 13 (Iowa 1974); *Castner v. Wright*, 256 Iowa 638, 652, 127 N.W.2d 583, 591 (1964); *see also Kuiken v. Garrett*, 243 Iowa 785, 804, 51 N.W.2d 149, 160 (1952).

Failure to timely object to the offending evidence in the present case creates a situation in which no error has been preserved on appeal to support reversal of the judgment. We have considered all issues raised by the plaintiffs and find no basis for disturbing the judgment of the district court.

AFFIRMED.