Amy GLENN, Appellant,

v.

Thomas CARLSTROM, David Boarini,
and Iowa Methodist Medical
Center, Appellees.

No. 94–1131.

Supreme Court of Iowa.

Dec. 18, 1996.

Jon C. Tack and Kermit L. Dunahoo of Dunahoo Law Firm, Des Moines, for appellant.

Thomas A. Finley and Kerry A. Finley of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for appellee Iowa Methodist Medical Center.

Michael H. Figenshaw and Karl T. Olson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees Thomas Carlstrom and David Boarini.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

CARTER, Justice.

Plaintiff, Amy Glenn, appeals from an adverse judgment in a medical malpractice action against Dr. Thomas Carlstrom, Dr. David Boarini, and Iowa Methodist Medical Center. She asserts that the trial court erred during the course of the proceedings with respect to several of its legal rulings. We consider each of her contentions and, for reasons discussed herein, affirm the judgment of the district court.

Plaintiff was born on May 25, 1970, with spina bifida, or an open spine. She had surgery at birth to close the lesion on her back. In 1978 she underwent bladder reflux surgery. Following a moped accident in 1984, plaintiff began to experience lower back pain and lower extremity fatigue. In an attempt to alleviate these problems, she underwent a tethered-cord spine surgery in 1985. In January 1987, she had a bladder augmentation procedure and, in the Fall of 1988, had orthopedic surgery to lower her instep.

In 1990 plaintiff began to experience lower back pain again. She was referred to Dr.

Carlstrom, a Des Moines neurosurgeon, by her pediatrician Dr. Spevak. Dr. Carlstrom examined her on November 12, 1990. He diagnosed a tethered spinal cord and recommended another surgery to release the tethered cord. Surgery was initially scheduled for January 1991 but was moved forward to December 21, 1990, to accommodate plaintiff's wedding plans and because Dr. Carlstrom was being called up for active service during the Persian Gulf War. On December 20, 1990, Dr. Spevak performed a preoperative history and physical examination and cleared her for surgery. Dr. Carlstrom performed the surgery on December 21.

Dr. Carlstrom visited plaintiff after the surgery on the night of December 21 and again on December 22 and 24. Dr. Spevak visited plaintiff every day, sometimes twice or three times a day. Dr. Carlstrom had arranged for his associates Dr. Boarini and Dr. Hayne to continue with plaintiff's postoperative care during his absence. Dr. Boarini saw the plaintiff on December 25, 29, 30, and 31. Dr. Hayne saw her on December 27 and 28. She was discharged from IMMC on December 31.

Plaintiff continued to experience severe pain, especially when walking. Dr. Boarini referred her to physical therapy. During this period, she was also seen by Dr. Spevak and Dr. Hayne. Dr. Carlstrom returned from the Gulf War in late March and examined plaintiff on April 2, 1991. He ordered further tests including an MRI, EMG, and x-rays. Plaintiff saw Dr. Carlstrom again on April 23, and he recommended her to Dr. DuBois, a neurologist who was interested in pain problems and helping patients deal with that pain. Dr. DuBois examined plaintiff on April 24 and again on May 9. She was readmitted to the hospital by Dr. Spevak due to the intense pain she was experiencing.

Dr. Carlstrom examined plaintiff in the hospital on May 20, 1991. She was then receiving twenty milligrams of morphine intravenously every hour. Dr. Carlstrom discussed with her his concern that she was receiving an excessively high dosage of morphine. According to Dr. Carlstrom the standard dose he gives a postoperative adult is between six and eight milligrams every three to four hours. After he left the room, a nurse told him, "She doesn't want to see you. She doesn't want you in her room anymore." Dr. Carlstrom did not believe that he had been "fired" and, according to his trial testimony, was never told by plaintiff or her mother that he had been fired. In fact, at the request of Dr. Spevak, Dr. Carlstrom continued to see plaintiff every day the rest of the hospitalization—May 21, 22, 23 and 24. During this period of time, at plaintiff's mother's request, Dr. Carlstrom attempted to arrange a visit to Mayo Clinic for plaintiff. That clinic would not accept her until she had been taken off narcotics. On May 24, Dr. Carlstrom examined plaintiff and recommended a Kydex backbrace for her lower back pain. This was his last contact with her. Plaintiff had another tethered spinal-cord operation in September 1991, performed by a Dr. Menezes. Her condition has shown some improvement following that surgery.

Plaintiff's claims in this action are based on alleged acts or omissions in her care by Dr. Carlstrom, Dr. Boarini, and Iowa Methodist Medical Center that she brands as malpractice. Following trial, the district court directed a verdict in favor of Dr. Boarini. The jury found in favor of the other two defendants.

### I. *Alleged Abandonment of Patient.*

■ Plaintiff's first legal argument asserts that the trial court erred in not submitting abandonment of patient to the jury as a separate claim of fault. The district court ruled that the alleged inattention to plaintiff's medical needs related to omissions occurring during a continuing course of treatment. The court thus viewed the issue for the jury to be whether there had been negligent treatment rather than whether there had been abandonment. We agree with that conclusion.

■ When a physician takes charge of a case, that employment continues until ended by mutual consent, the physician's dismissal by the patient, or the medical situation becoming one in which the physician's services are no longer needed. *McGulpin v. Bessmer*, 241 Iowa 1119, 1127, 43 N.W.2d 121, 125

(1950); *Surgical Consultants, P.C. v. Ball,* 447 N.W.2d 676, 682 (Iowa App.1989). Abandonment and lack of diligence in patient treatment are separate theories of medical malpractice. *Smith v. Lerner,* 387 N.W.2d 576, 577 (Iowa 1986). Abandonment involves an unwarranted termination of the professional relationship. *Id.*

Viewed most favorably to the plaintiff, the evidence falls short of presenting a situation in which plaintiff's doctors can be found to have terminated their relationship with her during the course of her care. Instead, the matters of which she complains involve medical judgments as to frequency of the doctors' contacts with the patient throughout a continuing course of treatment. These alleged omissions were properly submitted to the jury under a general claim of medical negligence. The district court did not err in failing to submit a separate issue concerning abandonment.

## II. *Failure to Admit Evidence of Standards of the Joint Commission on the Accreditation of Hospitals Concerning Informed Consent.*

■ Plaintiff alleged throughout the proceedings that the surgery was not performed with her informed consent. At several points during the trial, she attempted to place in evidence the standards of the Joint Commission on the Accreditation of Hospitals concerning informed consent. The trial court excluded the proffered exhibit from being admitted for the jury's consideration.

In the absence of a written consent signed by plaintiff (her mother signed for her), the issue was submitted to the jury on the basis of whether there had been an actual and knowing consent to the surgery based on discussions with the plaintiff by the doctors and hospital personnel. The written standards that plaintiff sought to place in evidence required adult patients to personally sign the written consent form.

■ We have recognized that hospital accreditation standards are not necessarily evidence of the legal standard of care in medical malpractice cases. *Van Iperen v. Van Bramer,* 392 N.W.2d 480, 486 (Iowa 1986).

In order to be admissible as some evidence of the standard of care, these accreditation standards must be authenticated and made relevant to the issue by appropriate expert testimony. *Id.* We find that the record made in the present case did not satisfy this requirement and that the trial court thus properly excluded the exhibit.

## III. *Refusal to Allow Independent Expert Inspection of Medical Records.*

■ On April 14, 1994, plaintiff alleged that the defendants had destroyed, removed, falsified, or concealed certain medical records. She based this claim on a deposition of a records custodian taken on March 1, 1994. In her deposition, this witness commented that she could not find certain medical notes, that certain other notes did not have her name on them, and that a date had been changed. Plaintiff's counsel filed a motion for continuance and also a motion for examination of original documents. The written motion requested that the court order defendants to turn over the originals of these medical records for independent evaluation by plaintiff's expert document examiner. A hearing was held on this motion on April 15, 1994. At this hearing, the hospital indicated that there was a day on which no medical records were made. Defense counsel asserted that the medical records that plaintiff could not locate were in fact in possession of her counsel in the courtroom. Plaintiff's counsel did not inspect these documents at this time in order to determine whether they were the records that he had been requesting.

The trial court ruled that plaintiff's requests should have been made soon after the records custodian's deposition had been taken, instead of waiting until a few days before trial. After repeated attempts to ascertain any factual basis for plaintiff's allegations, the trial court determined that, at worst, there had been a lapse in record keeping. Although the court concluded that this was "a fishing expedition," plaintiff's counsel was, nevertheless, allowed an opportunity to inspect the original documents. We find no abuse of discretion in the manner in which this issue was handled by the district court.

### IV. *Denial of Application to Amend Plaintiff's Petition.*

Plaintiff asserts that the trial court abused its discretion in refusing to allow her proposed amendment to the petition she filed on December 21, 1992. The motion to amend was filed on February 14, 1994, the last day to amend pleadings under the court's scheduling order. The amendment sought to add various new claims, including punitive damage claims against the defendant doctors, breach of warranty, abandonment, medical battery, malicious and willful battery, intentional infliction of emotional distress, breach of fiduciary duty, and tortious interference with medical treatment.

Plaintiff uses the cases of *Burke v. Hawkeye National Life Insurance Co.,* 474 N.W.2d 110 (Iowa 1991), and *Hariri v. Morse Rubber Products,* 465 N.W.2d 546 (Iowa App. 1990), to support her argument for amendment in this case. However, both of those cases dealt with amendments to conform to the proof and were submitted either during or after the start of trial. Unlike the amendment contemplated by plaintiff's counsel, an amendment to conform to the proof does not necessitate more discovery because all the evidence has already been admitted during the trial. A motion to amend pleadings should not be granted in close proximity to trial if it will substantially alter the issues. *Britt–Tech Corp. v. American Magnetics Corp.,* 487 N.W.2d 671, 674 (Iowa 1992); *Beneficial Fin. Co. v. Reed,* 212 N.W.2d 454, 456 (Iowa 1973). We are unable to conclude that an order by a trial court establishing a deadline for filing applications to amend pleadings carries any assurance that all applications made prior to the court's deadline will be granted. It is quite possible for a proposed amendment to be within the period prescribed in the court's order and yet be denied as untimely based on the extent to which the proposed new pleadings would alter the course of the litigation.

We agree with the district court that the proposed amendment would have substantially changed the issues to be tried, potentially deprived defendants of adequate representation if they were not granted a continuance, and would also have completely altered the course of trial preparation by reopening the entire discovery process. There is a strong indication in the record that plaintiff's counsel knew of the potential for asserting these claims as early as December of 1992 and yet failed to assert them until more than one year later. The district court did not abuse its discretion by not allowing the proposed amendments.

### V. *Whether Trial Management Orders Improperly Encroached on Plaintiff's Ability to Present its Expert Medical Evidence.*

The trial began on April 18, 1994. At the close of the first week's testimony, the trial court entered an amended trial management order, which provided as follows:

> Plaintiff shall call Dr. Kevin Smith and Dr. Gary Cromer on Monday, April 25, 1994. Plaintiff shall call one of these witnesses at 9 a.m. and the other no later than 1:30 p.m. Failure to comply with this order will result in sanctions which may include exclusion of the witnesses' testimony.

Plaintiff contends that this order unduly restricted her ability to effectively present her medical evidence to the jury.

A trial court has considerable discretion in directing the course of the trial. *Nichols v. Kirchner,* 241 Iowa 99, 106, 40 N.W.2d 13, 17 (1949); *Fournier v. Fraternal Order of Eagles,* 368 N.W.2d 849 (Iowa App. 1985). Discretionary rulings of the trial court are presumptively correct and will be disturbed on appeal only upon a clear showing of abuse of discretion. *Sheer Constr., Inc. v. W. Hodgman & Sons, Inc.,* 326 N.W.2d 328, 334 (Iowa 1982). In applying these principles, we must consider the circumstances under which the challenged order was entered.

At a pretrial hearing on March 28, 1994, both the court and defense counsel expressed concerns regarding the length of the trial and the need for organization, particularly with regard to the scheduling of defendants' expert medical testimony. Plaintiff's trial counsel represented that he would probably be able to present his case within six days. It became apparent before the trial had even

begun that it would run longer than had been anticipated. In response to the scheduling problems this would produce, it was agreed that the expert witnesses for the defense could testify on the seventh, eighth, and ninth days of the trial, and would be taken out of order if necessary.

On April 19, 1994, counsel for Iowa Methodist Medical Center informed the court that subpoenas had been served on several of its personnel, including its chief executive officer, a radiologist, and several nurses, most of whom had no involvement with the case. The hospital's counsel moved to quash the subpoenas. The district court overruled the motion to quash, reasoning that granting the motion would cause even more delay. However, the court at this time warned plaintiff's trial counsel that he must be ready to call the witnesses at the time stated in the subpoenas.

Despite repeated warnings and admonishments from the court, delays continued. This produced the amended trial management order of which plaintiff now complains. The court indicated that its motivation for issuing this order was its belief that defendants' medical experts should have the benefit of the testimony given by plaintiff's medical experts prior to the time that they testified.

Plaintiff's trial counsel immediately disregarded the amended trial management order by putting plaintiff's mother back on the stand at the time designated for the beginning of the testimony of his first medical expert, Dr. Smith. Notwithstanding the effect of this omission in shortening up the time allowed for Dr. Smith's testimony, that testimony was concluded before noon on April 25, 1994. At the conclusion of cross-examination by defendants' counsel, plaintiff's counsel was granted an opportunity for redirect examination of the witness and declined to make such examination.

After Dr. Cromer had testified in the afternoon of April 25, the district court inquired of plaintiff's counsel if he wished to make any further record with respect to Dr. Cromer's testimony, and counsel advised that he did not. Plaintiff made no offer of proof concerning any testimony that would have

been given by Dr. Smith or Dr. Cromer had plaintiff not been subject to the restrictions of the trial management order. Based on our review of these circumstances, we are unable to conclude that the district court abused its discretion in its issuance and enforcement of the amended scheduling order.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**