**In re the MARRIAGE OF Gary John IHLE and Tamera Gail Ihle.**

**Upon the Petition of**

**Gary John Ihle, Appellee,**

**And Concerning**

**Tamera Gail Ihle, Appellant.**

No. 97–344.

Court of Appeals of Iowa.

Feb. 25, 1998.

R.J. Hudson, II and Stacey N. Warren of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellant.

Joseph R. Cahill of Cahill Law Offices, Nevada, for appellee.

Heard by CADY, C.J., and SACKETT, and STREIT, JJ.

CADY, Chief Judge.

This is an appeal by Tamera Ihle from a decree for dissolution of her marriage to Gary Ihle. The district court granted primary physical care of the parties' son to Gary. Tamera challenges the award of physical care on appeal and further claims she was denied due process of law when the district court imposed rigid time limitations on the length of the hearing. She claimed these limitations prevented her from presenting all of her evidence to support her claim for primary care. We affirm the district court on our de novo review.

Gary and Tamera were married in 1983. They had one child, Dustin, born June 7, 1988.

Gary and Tamera both worked outside the home during the marriage. Tamera, however, was the principal caretaker of Dustin. Gary often worked long hours away from the home. Nevertheless, he was devoted to Dustin, and participated in his daily care. After Dustin started school, the parties purchased a hardware store in Huxley, which they operated together.

After the parties started to experience marital and financial troubles, Tamera began to exhibit some unstable behavior. Following a disagreement with Gary one evening, Tamera left the house, taking two firearms with her. She also left behind a note which Gary interpreted to be a suicide letter. Police were called and Tamera was eventually found in the hardware store. Tamera was subsequently admitted to the hospital and diagnosed with situational depression.

On another occasion, the evidence reasonably supported the conclusion Tamera staged a break-in and vandalism of the hardware store. Tamera then removed a surveillance video tape from a police car in an effort to prevent her detection. Despite evidence which clearly supported both incidents, Tamera denied culpability, and continued to do so throughout the dissolution hearing.

The district court administrator scheduled the case for a two-day trial, despite a request by the attorneys for additional time. This was done pursuant to an administrative directive that all custody cases in the district be scheduled for no more than two days. The attorneys then requested additional time from the presiding district court judge, who eventually granted the parties four days to try the case. This was accomplished after the judge agreed to give up a scheduled writing day, and another previously scheduled case settled on the eve of trial.[1] The presiding judge also issued an order requiring Gary and Tamera to complete their testimony before other witnesses could testify. The presiding judge periodically reminded the attorneys during the trial of the four-day limitation, and urged them to use their time wisely.

After Tamera's counsel completed his examination of a witness at the end of the fourth day of trial, the trial judge stated the case was concluded and adjourned the trial. Counsel for Tamera responded by requesting a continuance, indicating he had additional witnesses to call. The district court judge denied the motion, and again announced the trial was concluded.[2] There was no further record of the proceedings.

In the written decree which followed the trial, the district court awarded primary physical care of Dustin to Gary. It concluded Gary could better minister to the long-range best interests of Justin.

---

1. The record revealed the court administrator in the judicial district was directed by the chief judge of the district to schedule all dissolution of marriage cases involving child custody for two days. No cases are scheduled by the court administration for trial in the district on Friday of each week, which the record revealed was commonly known as a "writing day." This day actually provides judges an opportunity to research and write decisions, schedule ad hoc hearings on their own, or, as in this case, allow judges to finish uncompleted hearings or trials.

2. Counsel for Gary objected to the motion, arguing he had streamlined the presentation of his evidence to accommodate the time limitation, and had actually used much less time to present his case than counsel for Tamera. He asserted Gary would be prejudiced if Tamera was given additional time.

## I. Trial Time Limitations

 It is generally recognized that matters relating to the course and conduct of a trial, not regulated by statute or rule, are within the discretion of the trial judge. 88 C.J.S. *Trial* § 36 at 91 (1955); *see Glenn v. Carlstrom*, 556 N.W.2d 800, 804 (Iowa 1996) (trial court has considerable discretion in directing the course of a trial). Iowa has not enacted any statutes or rules explicitly addressing the authority of a district court to place limitations on the length of a trial. *But see* Iowa R.Civ.P. 195 (district court may limit time for argument to itself, but not arguments to the jury). Yet, rules exist which seem to embody the concept. Foremost, Iowa Rule of Evidence 403 authorizes trial courts to exclude even relevant evidence from trial if the evidence is needlessly cumulative or would cause undue delay or waste of time. Similarly, Iowa Rule of Evidence 102 instructs that the rules of evidence are to be construed to secure fairness in "elimination of unjustifiable expense and delay." Nevertheless, our Iowa appellate courts have not previously considered whether a trial judge's discretion to regulate the course of trial includes the imposition of limitations on the length of trial which prevents a party from presenting all its desired evidence.

Our federal courts specifically authorize trial judges to impose reasonable time limits on a trial. *See United States v. Hildebrand*, 928 F.Supp. 841, 844–845 (N.D.Iowa 1996). While no explicit statute or rule exists for this authority, it is recognized to be an inherent power of a trial judge. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3rd Cir.1995). The discretion of a trial court to place time limitations on a trial has been found necessary for a number of reasons, including to prevent an undue waste of time, avoid needless presentation of cumulative evidence, and to responsibly manage the stream of cases through the spectrum of justice. *See Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987). We find no reason to exclude our State district courts from exercising the same discretion.

 Yet, even when discretion exists for courts to impose time limits on trials, it is, like all discretion, not limitless. The discretion to manage trials is always constrained, in a large part, by due process principles requiring all litigants in the judicial process to be given a fair opportunity to have their disputes resolved in a meaningful manner. *See In re Marriage of Seyler*, 559 N.W.2d 7, 9 (Iowa 1997). The parameters of this constraint, then, are not drawn with bright lines. Instead, the type of constraint which will be permissible in a particular case depends upon the public and private interests involved, the administrative burdens implicated, the risk of an erroneous decision due to the nature of the hearing provided, and the value of any additional safeguards. *Id; see United States v. Raddatz*, 447 U.S. 667, 677, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424, 434 (1980). These factors are worthy of examination.

 The public and private interests in cases involving the custody and care of children are enormous. There are few other matters which exceed the interests of a spouse pursuing a claim for custody or primary care of a child. Furthermore, the public has an abiding interest in the future of its children, and the State, by implication, is a quasi-party to each dissolution action. *See Hopping v. Hopping*, 233 Iowa 993, 996, 10 N.W.2d 87, 89–90 (1943).

We readily acknowledge administrative burdens of case processing are a widespread problem for courts. This has caused courts to respond with a myriad of methods to handle these increased burdens, including time limitations on trials. Yet, the increased burdens on our courts may not be the same from state to state, just as problems of congestion and delays may vary from judicial district to judicial district within a state or even from judge to judge. Thus, the problem cannot be painted with a brush so broad as to support the imposition of time limits as a matter of course. Instead it is important to consider the administrative history involved in a particular case and limit the solution to the particular problem.

 The risk of erroneous decision-making resulting from time limitations is not always readily ascertainable. On one hand, the observation has been made that lawyers can "tend to confuse quantity of evidence

with the probative quality" of evidence in the trial of a case. *See United States v. Reaves,* 636 F.Supp. 1575, 1579 (E.D.Ky.1986). When this confusion exists, the evidence can become increasingly repetitive as the trial goes on, and time limits may have no impact on the ability of the decision-maker to render a fair decision. *See Johnson,* 808 F.2d at 678. Thus, it has been suggested that time limits may actually enhance the trial process by forcing attention to those matters that are truly important. *See Reaves,* 636 F.Supp. at 1579. On the other hand, arbitrary, inflexible time limits can impose a serious threat to due process principles. Justice cannot always be achieved within the orderly environment of an assembly line. The importance of evidence is often not understood until all the evidence is heard. Thus, judges must not sacrifice their primary goal of justice by rigidly adhering to time limits in the name of efficiency. *General Signal Corp. v. MCI Telecommunications Corp.,* 66 F.3d 1500, 1509 (9th Cir.1995). If important evidence has been excluded from consideration as a result of time limits, the quality of the decision necessarily suffers. Furthermore, public confidence in the justice system tends to become tarnished when a trial concludes without an opportunity for the parties to present all the evidence they believe to be important. *See In re Marriage of Daniels,* 568 N.W.2d 51, 55, n. 2 (Iowa App.1997) (emphasizing need for parties to be given a full opportunity to present evidence).

■ The final due process consideration is the value of additional safeguards in hearings constrained by time limits. These safeguards address the need for all essential and relevant evidence to be presented. The safeguard employed by courts before excluding evidence from a trial under Rule 403 is to balance the probative value of the proffered evidence against the resulting prejudice. The reason for this balancing process helps explain the disfavor courts often express towards the imposition of rigid time limits. *See Duquesne Light Co.,* 66 F.3d at 610. Time limits relate to the fairness of a trial, and if imposed, must be applied with sufficient flexibility to ensure a fair trial. *See Hildebrand,* 928 F.Supp. at 848. They must

also be allocated evenly so they are fair to both sides of the case. *Id.*

■ Having examined the background of the issue, we turn to the specific claim and circumstances in this case. We first note Tamera did not lodge an objection to the imposition of time limits prior to or during trial, and did not alert the trial court to the complete claim now urged on appeal that the failure to modify the time limitation denied her due process of law. Gary asserts these omissions preclude our review of the due process considerations on appeal. *See Martin v. Raytheon Co.,* 497 N.W.2d 818, 820 (Iowa 1993) (even claims of constitutional dimension are waived on appeal if not specifically raised at trial).

■ Although Tamera made no specific objection at trial that the denial of her motion for continuance also constituted a denial of due process, we recognize a request to call a witness at trial broadly implicates the fundamental fairness and opportunity to be heard components of due process. Thus, we believe the procedural history of this case does not preclude our consideration of the claim raised by Tamera. It does, however, impact our standard of review. The only claim raised at trial was the district court failed to modify the time restriction by granting the motion for continuance. Accordingly, we review the claim for an abuse of discretion. *See Bell v. Iowa Dist. Court,* 494 N.W.2d 729, 731 (Iowa App.1992).

■ We agree that arbitrary, inflexible time limits are disfavored. *See General Signal,* 66 F.3d at 1508. They will, in many instances, support a finding of abuse of discretion, and require a new trial. *See McKnight v. General Motors Corp.,* 908 F.2d 104, 115 (7th Cir.1990). Judges, should impose time limits only when necessary, after making an enlightened analysis of all available information from the parties. *Duquesne Light Co.,* 66 F.3d at 610.

■ In this case, the district court neither requested or reviewed, prior to denying the motion for continuance, any proffered evidence or statements from counsel concerning the nature of the testimony Tamera wanted to present. While we believe it

would normally be essential for the district court to examine proffered testimony before deciding to grant or deny a request to present additional evidence, it is equally incumbent upon the party seeking additional time to present evidence to establish prejudice. We will not presume the existence of prejudice when evidence is excluded from trial. *See Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 193 (Iowa 1982) (ruling excluding evidence will not be reversed unless discretion clearly abused to prejudice of complaining party); *McKnight*, 908 F.2d at 115 (prejudice required to reverse on account of rigid time limits); Iowa R.Evid. 103(a) (error may not be predicated on the exclusion of evidence unless a substantial right of a party is affected and an offer of proof was made or the substance of the excluded evidence was otherwise identified).

Thus, we cannot conclude any substantial rights have been affected and prejudice resulted. Additionally, with the record we confront, we are unable to conclude the trial court abused its discretion in denying the motion. Not only does the trial court record fail to disclose the nature of the excluded testimony and its importance to the issues in the case, it fails to identify any problems confronted by counsel for Tamera in managing the allotted trial time. The trial court was never informed of any impending difficulties in meeting the deadline until the deadline had passed. Moreover, it appears from the record counsel for Tamera actually used considerable more time during the trial then counsel for Gary.

## II. Primary Care

The governing consideration in deciding the issue of primary care in a dissolution of marriage is the best interests of the child. Our legislature has identified a host of factors to weigh in determining the best interests of the child in each particular case. *See* Iowa Code § 598.41(3) (1997). Additionally, our courts have outlined other factors to consider. *See In re Marriage of Ford*, 563 N.W.2d 629, 631 (Iowa 1997). The critical inquiry is to determine which parent will do the best job in raising the children. *Id.*

Tamera asserts she has been the primary caretaker of Dustin throughout the marriage, and Gary has not been totally supportive of her relationship with Dustin since the separation. Gary responds that he has also been active in Dustin's life, and is more stable than Tamera.

On our de novo review of the evidence we agree the district court correctly designated Gary to be the primary caretaker of Dustin. The evidence reveals both parents would adequately perform the role of primary caretaker, and our decision does not come easy. Tamera and Gary both maintain a close relationship with Dustin and have generally been alert to meet his needs. We have lingering doubts, however, about Tamera's stability and character, resulting primarily from the staged breakdown and the gun incident.

We acknowledge care must be exercised in judging a parent based on activities which take place during a particular time frame of the marriage, such as the separation or breakup of the relationship. Instead, a better picture of a parent can be found by viewing the total circumstances, and putting isolated events into perspective. Nevertheless, not only did Tamera display very unstable and dishonest behavior during the later part of the marriage, she persisted in being untruthful at trial about her actions in the face of overwhelming evidence of her culpability. She was also carelessly and untruthfully willing to implicate others in an effort to help herself.

Giving deference to the district court's findings on credibility and weight of the evidence, we conclude Gary is better suited to provide for Dustin's best interests as the primary caretaker. *See Ford*, 563 N.W.2d at 633–34. We find the parties shall be responsible for their attorney fees. Costs divided equally.

**AFFIRMED.**

STREIT, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur specially. I concur with the trial court's decision to award Gary primary physical custody. The evidence shows he is the superior parent.

I find, as does the majority, the issue of whether the trial court incorrectly failed to continue the trial, precluding Tamera from presenting additional evidence, was not preserved for review. Tamera failed to make any record at the trial level concerning the additional testimony she now claims she should have been permitted to introduce.

While it could be argued our responsibility to protect the child's interest demands a remand, the evidence showing Gary to be the superior parent is so strong that on this record I do not find it necessary.