# IN THE COURT OF APPEALS OF IOWA

No. 19-0670
Filed April 29, 2020

IN RE THE MARRIAGE OF LISA M. STAUFFER
AND GRAIG J. STAUFFER

Upon the Petition of
**LISA M. STAUFFER, n/k/a LISA M. CAMPBELL,**
        Petitioner-Appellee,

**And Concerning
GRAIG J. STAUFFER,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Henry County, Michael J. Schilling,

Judge.


        The father appeals the district court's denial of his petition to modify the

visitation provisions of the parties' dissolution decree.  **AFFIRMED.**


        Beau A. Bergmann of Bergmann Law Firm, P.L.L.C., Mt. Pleasant, for

appellant.

        Marlis J. Robberts of Robberts & Kirkmann L.L.L.P., Burlington, for

appellee.


        Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Graig Stauffer appeals the denial of his petition to modify the visitation provisions of the November 2015 decree asking for an alternating week-to-week visitation schedule and a "right of first refusal" when others were caring for his and Lisa Stauffer's[1] child, C.S. He faults the district court for not allowing the thirteen-year-old child to testify and for using a substantial-change-in-circumstances standard rather than the less stringent material-change-in-circumstances standard.

### I. Background Facts and Proceedings.

Lisa and Graig married in 2000. They divorced in November 2015. These parents had two children, but the older child was killed in a car accident so the younger child was the focus of the modification trial.[2] Before filing for a divorce in 2014, Lisa obtained a protective order against Graig.[3] In March 2015, Graig alleged the child "resided" with the maternal grandparents and was refusing to return to the child's mother. Yet with this strife, clear heads prevailed and ultimately these parents stipulated to the divorce including custody and visitation of their child. They agreed to joint legal custody with physical care to Lisa. And they crafted a physical-care schedule with specific visitation time. The schedule provided:

---

[1] Lisa Stauffer is now known as Lisa Campbell.
[2] This child was born in 2005 and was thirteen years old at the time of trial.
[3] Lisa successfully extended the no-contact order through the history of the case, and it remains in effect. The court modified the order in June 2017 to allow contact only for pick-up and delivery of the child and to allow grandparents to also handle the transportation duties.

5. <u>PHYSICAL CARE SCHEDULE</u>.  The joint physical care schedule shall be as the parties agree, but should the parties not agree, the parties shall share physical care of C.J.S. as follows:

<u>School Year Schedule</u>: [G]raig shall have every Tuesday from after school until the beginning of school on Wednesday; every Thursday from 5:00 p.m. until 8:00 p.m. and alternate weekends beginning after school Friday till school the following Monday. . . .

<u>Summer Schedule</u>: The parties shall alternate weeks with Graig being awarded the first full week after the last day of school either, ending or beginning with Graig's alternate weekend as the case may be.  Summer exchanges shall occur at 5:00 p.m. on Friday or 5:00 p.m. Sunday to coincide with alternate weekend schedule.

Unfortunately the conflict between the parents, even with a no-contact order in place, continued.  Amid a history of many court filings, this modification action started when tensions cumulated after the child refused to return to Lisa in the summer of 2017.  Lisa applied for rule to show cause, and, on the same day, Graig countered with the petition for modification to extend the summer alternate week schedule through the entire year or alternatively to add a "right of first refusal" provision to enhance his visitation rights.  In his modification petition, Graig asserted that the child's relationship with the mother had deteriorated so that the child refused to return to the mother and that the child mainly resided with the maternal grandparents, whom Graig claimed the child disliked.  After a hearing on the rule to show cause, the district court found Graig in contempt of court, noting "it appears that Graig is more interested in using C.S. to build a case for the modification."  As court proceedings dragged on, Lisa learned in the summer of 2018 that Graig enrolled the child in another school district.  Lisa requested and obtained an injunction to stop the move from the school the child had attended since kindergarten.  An order granting the injunction to stop the enrollment followed.

Once the modification trial began, Graig approached the district court for permission to call the child as a witness. After hearing arguments, the district court refused to allow the thirteen-year-old child to testify. The district court denied Graig's application for modification of the visitation schedule and found he did not prove a material change in circumstances justifying a change in the schedule. Graig appeals and narrows his complaints to: (1) because the issue was a change in visitation, not custody, the trial court erred by applying a more stringent substantial change in circumstances burden of proof to the evidence and (2) the trial court abused its discretion by refusing to hear the child's testimony.

**II. Scope of Review.**

We review the modification action de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the district court's fact-findings, especially those on witness credibility, though we are not bound by them. *Id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *Id.* (citation omitted)).

We review evidentiary rulings and other "matters relating to the course and conduct of a trial, not regulated by statute," for abuse of discretion. *In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998); *see also In re Marriage of Abkes*, 460 N.W.2d 184, 186 (Iowa Ct. App. 1990) (considering whether the trial court abused its discretion in preventing child from testifying at dissolution proceedings).

### III. Analysis.

**A. Testimony of the Child.** At the trial, Graig asked that the parties' thirteen-year-old child testify to provide a "baseline of credibility for other witnesses." Suggesting the child could meet privately with the court,[4] the offer was declined. Graig asserts the court abused its discretion by denying this evidence. *See Abkes*, 460 N.W.2d at 186 ("It is within the inherent power of the trial court to protect the children in this situation and not allow them to testify."). But during her testimony, the child's therapist emphasized the stress imposed upon the child in the modification proceedings. She opined the child was "caught in the middle" of the parental conflict. The court observed that Graig wanted the child to be the "tie-breaker" to discern what witnesses were truthful, not to offer a preference between parental homes. Besides, the counselor detailed the child's voiced concerns that Graig sought to present directly from the child. In the end, the court refused to utilize the testimony of a child to make its credibility decisions. Stated more directly, the court refused to rely on a thirteen year old to break the tie between the conflicting versions of events. And the potential harm to the child outweighed any

---

[4] Counsel suggested the child meet with the court without the parents but with counsel present as well and a record made. *See Conkling v. Conkling*, 185 N.W.2d 777, 785 (Iowa 1971) ("Otherwise the judge may have important information about the case of which counsel are unaware at the trial. If the interview is conducted tactfully by the judge and counsel remain in the background, usually the children will not be inhibited in casting light on the situation—and that is the objective of the parties' stipulation.").

benefit to the factfinder. The reasoning and perceptions of the district court are sound.

Generally when determining the weight given to a child's wishes, we examine these factors: "(1) the child's age and educational level; (2) the strength of the child's preference; (3) the child's relationship with family members; and (4) the reasons the child gives for [the child's] decision." *McKee v. Dicus*, 785 N.W.2d 733, 738 (Iowa Ct. App. 2010). And in a modification action, a child's preference is given less weight than in the original custody proceeding. *In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000).

But here Graig's counsel clarified:

We're not asking the Court to ask the child where he wants to live or where he does not want to live. We are asking the Court to give the child an opportunity to vent and to ascertain most notably, from a legal point of view, the credibility of where the cornerstone issue or the genesis of this particular part of the litigation began.

Yet now on appeal, Graig asserts the district court denied the child a chance to express his preference and "at [a] minimum corroborate or contradict other testimony at trial . . . ." We do not consider this a case in which testimony of the child's preference was denied. It was not sought at trial, and Graig may not complain of it now. *See In re Iwers' Estate*, 280 N.W. 579, 584 (Iowa 1938) ("Having invited the error, if any there was, [respondent] may not now take advantage of it.").

Based on the rationale given at trial for the child's testimony, we are unsure what in camera interview format Graig envisioned. But even if the child's preference was sought by Graig, the court did not abuse its discretion in refusing to hear from the child. When counsel offers testimony of a child, it is imperative

the district court observe the best-interests-of-the-child standard. Here the trial court observed the testimony of the witnesses, evaluated the conflicting versions of events, and determined the credibility of those witnesses. Thus the district court ably judged the parties' and witnesses' creditability. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Offering the child as a "tie-breaker" of the evidence would place tremendous pressure on that child. This is especially true here, where the child's exposure to the conflicts of the parents has been so prevalent and his counselor described the child's resulting stress. The district court noted that stress, and we do as well. We find no abuse of discretion and hold the district court correctly declined to hear from the child on the subject of credibility.

**B. Requisite Proof of a Change in Circumstances.** Convinced the child spent most of Lisa's custodial time with her parents, Graig requested expanded visitation rights and at trial asked for the opportunity to serve as the first option of care if Lisa was at work. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994) (recognizing "reasonable discretion of the trial court to modify visitation rights" and declining to "disturb its decision unless the record fairly shows it has failed to do equity"); *see also In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (reiterating "once custody of children has been fixed it should be disturbed only for the most cogent reasons" (citation omitted)). Graig complains that the district court used the wrong standard when evaluating the changed circumstances in this modification. He asserts he proved the requisite change in circumstances.[5] In its decision, the court noted both the general change-in-

---

[5] The court allowed Graig's post-trial amended petition to conform to the proof. The amended petition addressed deterioration of communication between the

circumstances standard and the standard applicable to a modification of visitation. *Compare In re Marriage of Jacabo*, 526 N.W.2d 859, 864 (Iowa 1995) ("A party who seeks a modification of a dissolution decree must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the entry of the decree or its last modification."), *with Salmon*, 519 N.W.2d at 95–96 ("The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children").

We agree that "material change in circumstances" is the proper standard. *Salmon*, 519 N.W.2d at 95–96. The court made it clear Graig failed to prove a change in circumstances allowing a modification of the schedule. While the district court did not specifically reference use of a *substantial* change in circumstances or that of a *material* change in circumstances, in applying either, Graig's petition fails. To arrive at its conclusion, the district court also focused on the best interests of the child. *See id.* at 96 (recognizing the lower standard protects the best interests of children by fostering a continuing association with the noncustodial parent). Even considering the child's best interests, we agree with the district court.

To expand the visitation, Graig had to show a material change in circumstances "beyond the contemplation of the court at the time of the decree."

---

parties, the inordinate time spent with the maternal grandparents, a changed work schedule of the mother, and the child's increased involvement in extracurricular activities.

*In re Marriage of Hute*, No. 17-0046, 2017 WL 3283382, at *3 (Iowa Ct. App. Aug. 2, 2017).  While he listed a number of circumstances impacting his case, none of them justified a change in the decree.   Graig raised the difficulties with communication with Lisa.   But before the divorce occurred, hostility existed between these parents as reflected by the need for a no-contact order.  Likewise, Graig testified that before the divorce was finalized he had asked for a right of first refusal option in the decree, knowing that Lisa's parents provided care when she had to work.   Now her working hours provide more contact with the child than before the parties divorced.  In any event, the district court found Graig not credible on the time he claimed the child spent with the maternal grandparents.  Finally, as for any issue with extracurricular activities of the child, the decree specifically references these activities and noted "[b]oth parents are encouraged to attend all of the child's activities."   None of the reasons requiring a change advanced by Graig were materially different than what concerns or issues existed at the time the parties stipulated to the custody arrangement.   Thus no change in circumstances warranting a week-to-week transfer was proven.

It is clear from the testimony that C.S. loves both parents and these parents love their child.  Yet Graig argued the change in schedule would reduce the hostility between the parents.  We agree with the district court that Graig failed to show how this solution of changing the schedule could "fix" the tension.  The district court offered suggestions to support the child, such as being more flexible with each other, which we hope will be heeded.  And the decree contemplated flexibility with parenting time.  Finally, to pave the way to better communication, the district court ordered co-parenting counseling rather than crafting changes to the stipulated

parental time. Now all these parents need to do is apply what they learn from counseling, stop litigating, and think only of their child.

**C. Right of First Refusal.** Finally, Graig requested a "right of first refusal" provision at trial, but in his appellate brief, no authority was cited on that topic. Instead, Graig addressed the subject by stating

> [a]s was argued during the course of trial, should the natural mother not be able to spend time with the minor child, the amount of time the natural father should be allotted should therefore be increased. *This should not be considered merely to the right-of-first-refusal request but primarily to the material change in circumstances.* It could not have been foreseen by the Court that the minor child would spend such a significant amount of time away from his natural parents.

So we decline to address Graig's request for this change in the visitation structure. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) ("[W]e refuse to assume a partisan role and undertake a party's research and advocacy when a party's failure to follow the rules would require us to do so to reach the merits of the case."). But even if we addressed the issue, we do not agree it could work with these parents unless they both support it. *See Day v. Anderson*, No. 17-1808, 2018 WL 3302363, at *4–5 (Iowa Ct. App. July 5, 2018) (affirming decree modification removing provision because it was "a source of confusion and stress"); *In re Marriage of Tech*, No. 13-0862, 2013 WL 6712580, at *6 (Iowa Ct. App. Dec. 18, 2013) (affirming decree modification eliminating this provision because it caused the children stress).

The district court declined the invitation to add a "right of first refusal" component to the parties' already strained communication, and we agree.

**IV. Conclusion.**

Given the limited benefit from the child's intended testimony and the counselor's sage advice related to the child's stress, the district court appropriately declined to interview the child. And like the district court, we find no change in circumstances, material or otherwise, that opens the door to any change of visitation, including the right-of-first-refusal option.

**AFFIRMED.**