# IN THE COURT OF APPEALS OF IOWA

No. 19-1305
Filed June 17, 2020

**JAMESON MATTHEW LANDON,**
Plaintiff-Appellee,

**vs.**

**DESIREA ISABEL MEYER, n/k/a DESIREA ISABEL TRITZ,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Harrison County, Craig M. Dreismeier, Judge.

Desirea Tritz appeals from a ruling denying her application to modify child custody. **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant.

Chad D. Primmer, Council Bluffs, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**BOWER, Chief Judge.**

Desirea Tritz appeals from a ruling denying her application to modify child custody. She contends there has been a material change of circumstances warranting a change to the shared-care arrangement currently in place for the child she shares with Jameson Landon. Jameson has not filed an appellate brief.[1]

> Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child.

*Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). The party seeking to modify custody bears a heavy burden. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). This is because "once the custody and care of children has been fixed it should be disturbed only for the most cogent reasons." *Id.* The child's best interests are the controlling consideration. *Id.*

The district court entered an extensive and thoughtful ruling. The court acknowledged Jameson had a "long history of problems with alcohol":

> This case is difficult for the court in that one of the primary issues relied upon by Desirea centers around Jameson's drinking. Jameson's drinking predated the birth of M.W.L. It was a reason why Desirea broke apart from Jameson. Thereafter, she believed his drinking was in check and had no reason to believe he was putting M.W.L. in harm's way. Despite his history of alcohol use, a shared parenting arrangement worked and worked well for a number of years. Testimony was provided which referenced poor decisions/actions on Jameson's part in the past. With the exception of the November 2018 incident, this court was left with the impression that the activity complained about either did not occur while Jameson was caring for M.W.L.; or occurred years prior. Generally, there was

---

[1] *See White v. Harper*, 807 N.W.2d 289, 292 (Iowa Ct. App. 2011) (noting an appellee failing to file a brief does not require reversal; "we will not search the record for a theory to uphold the decision of the district court," and "confine ourselves to the objections raised by the appellant" (citation omitted)).

little detail provide about a majority of the problems complained about regarding Jameson, his alcohol consumption and specific instances of how this impacted his ability to care for M.W.L.

The trial court noted Jameson's issue with alcohol predates the original 2013 stipulated joint custody decree and predates the 2015 stipulated modified parenting plan. Moreover, there are court-ordered safety measures, which were put in place related to Jameson's drinking at an emergency temporary hearing after the modification was filed.[2] After the emergency hearing, the district court denied a temporary change to the 2015 stipulation of shared physical care.

As noted previously, Desirea's complaint relates to Jameson's alcohol consumption. Desirea points to Jameson's two operating-while-intoxicated convictions. However, these convictions go back to 2010 and 2011. These convictions and Jameson's drinking behavior in 2013 were apparently less of a concern when Desirea agreed to joint legal custody and joint physical care in the original decree. In her brief, Desirea acknowledges she and Jameson "were very successful in co-parenting" their child until she filed the petition for modification—in 2019.

Desirea emphasizes one incident in November 2018. Jameson acknowledged he had been drinking before picking the child up but stated he was fine to drive. And despite following Jameson to his house, Desirea left the child in his care.

---

[2] Jameson was required to have installed an Intoxalock device on the vehicle he uses to transport M.W.L. in order to detect the presence of alcohol. Jameson is prohibited from driving M.W.L. in any vehicle without an Intoxalock installed. Jameson is also prohibited from otherwise consuming alcohol while M.W.L. is in his care, custody, and control.

Our precedent cautions us to exercise care in "judging a parent based on activities which take place during a particular time frame. . . . Instead, a better picture of a parent can be found by viewing the total circumstances, and putting isolated events into perspective." *In re Marriage of Ihle*, 577 N.W.2d 64, 69 (Iowa Ct. App. 1998). We have held that a parent's serious criminal record and substance abuse after entry of the decree does constitute a substantial change in circumstances. *See In re Marriage of LeGrand,* 495 N.W.2d 118, 120 (Iowa Ct. App. 1992). But substance use that does not endanger the child does not. *See In re Marriage of Montgomery*, 521 N.W.2d 471, 474 (Iowa Ct. App. 1994).

The department of human services (DHS) and law enforcement have been contacted with reports of Jameson's drinking and discipline of the child by Kelly, Jameson's fiancée. DHS did not recommend any type of juvenile court proceedings or a change in placement of the child. The child's therapist and a DHS service provider reported no safety concerns with Jameson or Kelly's care of the child. Desirea has found support for her gaining custody of the child from Jameson's parents. Jameson's parents are not fond of Kelly and have not been seeing as much of their grandchild since Jameson's relationship with Kelly began. They are not happy with the situation and have sided with Desirea.

A child custody investigator was appointed on Desirea's motion. The investigator spoke with Jameson's parents and sister, who reported they noticed changes in Jameson's behavior and personality and were concerned about his relationship with Kelly. The investigator recommended physical care of the child be with Desirea during the week and with Jameson every other weekend. However, as noted by the district court, this report was written as if the court were

making an initial placement decision. It was not. We noted above, "once the custody and care of children has been fixed it should be disturbed only for the most cogent reasons." *Frederici*, 338 N.W.2d at 158. We agree with the district court the mother has failed to establish the requisites for modification here. After our de novo review of the record, we agree with the trial court's conclusion there has been no showing of a substantial and material change of circumstances such as would allow the modification of child custody.

**AFFIRMED.**

Ahlers, J., concurs; Greer, J., dissents.

**GREER, Judge** (dissenting)

I respectfully dissent. I would reverse the district court ruling and modify the shared-care arrangement granting physical care to the mother, Desirea. This conflict arose after a November 2018 incident where the father, Jameson, arrived to the meeting point to pick up his young child after consuming alcohol. Desirea believed Jameson was intoxicated. To protect the child, she refused to allow Jameson to drive the child that evening. She followed Jameson to his home and delivered the child to him. Desirea later learned that after she left the child at Jameson's home, he drove with the child ten to fifteen miles to his fiancée's home. After reporting this incident, the Iowa Department of Human Services (DHS) confirmed a finding of abuse based on denial of critical care.[3] Because of the drinking-and-driving incident and other matters discussed below, DHS recommended voluntary services to assist Jameson and his fiancée in appropriate discipline and co-parenting skills and following through with substance-abuse evaluation and aftercare. I believe the alcoholism concerns[4] and issues with the

---

[3] The DHS report detailed the child's reports of other times Jameson drove with an open container of alcohol and of an incident where Jameson "almost tipped" the truck into the ditch. The Child and Family Reporter (CFR) addressed a DHS meeting with family, attorneys, Jameson, his fiancée, and Desirea, where the fiancée expressed "that although 'Jameson can drink excessively and need[s] to nip that in the butt' that she would never force him to attend treatment like his family and DHS has." Likewise, other family members testified about a deterioration in Jameson's behavior related to his alcoholism.

[4] Diagnosed with alcohol use disorder-severe dependence, Jameson admitted in his evaluation that his alcohol use has increased since the "situation with his son began" and in the last two to twelve months he drank weekly and operated a vehicle under the influence. His evaluation noted he "lack[ed] insight and judgment to his current situation."

stability of Jameson's home establish a substantial change in circumstance related to custody.

Once the modification application was filed, the district court ordered an investigation of the parental homes. The CFR recommended that Desirea have physical care of the child. Citing several mitigating reasons, her report listed concerns about Jameson's drinking, the relationship and parenting styles involving the fiancée, and the necessity for consistency during the school week to help with the child's academic struggles.

The following principles apply to modification of the physical-care provisions of a custody decree:

> [T]he applying party must establish by a preponderance of evidence that conditions since the [custody order] was entered have so materially and substantially changed that the [child's] best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the [custody order] was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[]. A parent seeking to take custody from the other must prove an ability to minister more effectively to the [child's] well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

I believe Desirea met her burden to show a substantial change in circumstances. Likewise, she established her superior ability to minister to the child's well-being. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *Frederici*, 338 N.W.2d at 158. Because our primary consideration in making this determination is the long-term best interests of the child, given Jameson's failure to address the alcoholism that continues to plague him, especially in times of

stress, Desirea should have physical care of their child. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). "In determining which parent serves the child's best interests, the objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity." *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). Given the safety concerns related to the alcohol usage, the difficulties adjusting to the relationship with Jameson's fiancée, and the child's educational challenges, physical care with Desirea instead of an equal shared-care arrangement is preferred in my view.

Issues with Jameson's fiancée are concerning. "Giving [this child] soap" and spanking him because the child "pooped" his pants reflects a lack of empathy and understanding about childhood behaviors. There are also documented issues related to the child's stress with the fiancée's homework protocol.[5] Likewise, testimony indicated the status of the fiancée's and Jameson's relationship impacted the child and Jameson's other family relationships. Desirea testified in January 2019 Jameson called asking for her to take the child because he was ending the relationship with the fiancée and he was afraid how she would react. Desirea took over care, as did Jameson's parents, and he left on a snowmobile trip. When he returned, Jameson's mother observed Jameson to be intoxicated and refused to allow the child to leave with his father. From January 2019 until March 2019, Desirea assumed weekly care and, on Jameson's weekends, his parents took care of the child. Angered with his mother, Jameson did not participate in any weekend visitation during this time but did go on yet another

---

[5] The child struggles with reading and math and many witnesses, including the teacher, described the child's dislike of doing homework with his father's fiancée.

snowmobile trip. Although separated from January until March, the fiancée reported seeing Jameson and offering that he looked "terrible" and like he had been drinking. The couple reunited in March, and Jameson demanded his regular custody schedule. Desirea moved for an emergency hearing, and the court ordered a substance-abuse evaluation and required the collateral affidavits detailing alcohol concerns be shared with the evaluator. Jameson attended the evaluation but failed to share the collateral information. Likewise the court required installation of an Intoxalock device on any vehicle of Jameson's used to transport the child and to not drink while caring for the child.[6] He violated those conditions by drinking on one occasion at a party in his home with the child present. Desirea testified she observed Jameson driving with the child in a vehicle without an Intoxalock installed.

While the majority notes Jameson's long history of problems with alcohol predate the stipulated parenting plans, it is significant to me that, given the previous open custodial arrangement where these parents had ongoing contact, there were no previous observations or concerns about Jameson's alcoholism or the child's stability. While his alcoholism was a known condition before the child's birth, alcoholism is a disease that does not go away but can be addressed with appropriate behavior. Desirea was aware of Jameson's alcohol history but believed he had "cleaned it up." As Desirea learned by observation and then through conversations with Jameson's family members, Jameson's check on his

---

[6] Jameson maintained that drinking coffee with creamer caused the breathalyzer to malfunction and, because it was installed on a truck that was breaking down, he was not consistently using it.

condition deteriorated. A family intervention occurred, ending with Desirea, Jameson's family, and his fiancée recommending Jameson get "help" with his drinking. Desirea and Jameson's mother testified even the fiancée raised concerns about Jameson's wellbeing before relationships became tense. Yet with this issue in the forefront during these proceedings, Jameson continued to drink alcohol and violate the court's conditions, blaming his mother and Desirea for his stress. These behaviors do not bode well for the child and based on the CFR's very detailed report, circumstances have changed, favoring a change in custody to Desirea.

Given these concerns, I would grant physical care to Desirea and remand for entry of child support and liberal terms of visitation for Jameson with protections in place related to his use of alcohol.