**IN THE COURT OF APPEALS OF IOWA**

No. 24-0543
Filed June 18, 2025


IN RE THE MARRIAGE OF TAMEKA SANDERS
AND DEWAYNE SANDERS

Upon the Petition of
TAMEKA SANDERS, n/k/a TAMEKA WILSON,
        Petitioner-Appellee,

And Concerning
DEWAYNE SANDERS,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark Fowler, Judge.


        The respondent appeals from the district court's property division in the decree dissolving his marriage. **AFFIRMED.**


        Sierra Meehan Strassberg of Babich Sarcone, P.L.L.C., Des Moines, for appellant.

        Harold J. DeLange, II, Davenport, for appellee.


        Considered without oral argument by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

DeWayne and Tameka Sanders were married in September 2020 and divorced in February 2024. DeWayne appeals from the decree dissolving this short-term marriage, claiming the district court erred in "failing to allow [him] to continue the trial date or submit evidence at or after trial." He also claims the court's property division was inequitable. We affirm.

## I. Procedural Issues

DeWayne retained an attorney to represent him shortly after Tameka petitioned to dissolve the marriage in February 2023. The attorney's representation was limited to helping DeWayne negotiate a stipulated dissolution decree. When that failed, DeWayne's attorney moved to withdraw a few days before the trial in October. The court set the motion for a hearing and continued the trial to November. DeWayne did not attend the hearing on the motion, although he was notified about it. So the court granted the withdrawal.

Tameka tested positive for COVID-19 a few days before the November trial date, and the court granted her motion to continue. Two days before the rescheduled trial in December, DeWayne filed a pro se motion to continue because he had the flu. The district court did not rule on the motion, and the parties proceeded to trial. DeWayne did not renew the motion at trial or ask the court to rule on it. On appeal, DeWayne argues "the court entirely neglected to respond" to his motion and suggests that he should have been granted a continuance. But, as DeWayne's argument recognizes, error was not preserved on that issue. *In re Marriage of Heiar*, 954 N.W.2d 464, 469–70 (Iowa Ct. App. 2020) ("To preserve an issue for appellate review, it must be raised and then decided at the trial level.").

Thus, we do not consider this claim further, except as it bears on DeWayne's related argument about his ability to submit evidence at trial.

As the petitioner, Tameka testified before DeWayne, focusing on the two major purchases the parties made during their marriage—a home in Davenport and a recreational vehicle (RV). When he started cross-examining Tameka, DeWayne asked the court for time to "produce a document" about "financing and whatnot" for the parties' home. After confirming that DeWayne had known about the upcoming trial for several months, the court denied his request, telling him: "Today was the day to come ready with everything." Although DeWayne declined to continue cross-examining Tameka, he testified about the financing for the home and the purchase of the RV, as well as other issues.

DeWayne now argues that he was not afforded his due process right to have his "dispute[] resolved in a meaningful manner." He contends that once the court learned about the "lack of meaningful evidence available on the date of trial and DeWayne's need and desire for additional time to contribute to the record (or find counsel to assist with that task), it would have been prudent to have allowed more time for both parties in some way or another."[1] Because DeWayne did not

---

[1] DeWayne also claims that he "was not immediately notified that he would be proceeding without counsel, he was not able to submit timely motions or evidence prior to trial, and he was not able to be served with the Petitioner's Witness and Exhibit List or her proposed exhibits prior to trial." But the record contains an email from DeWayne's attorney notifying him about the motion to withdraw and the hearing on the motion. And, as discussed above, DeWayne agreed at trial that he knew about the motion, the hearing, and the continued trial dates. He also electronically filed his motion to continue before the trial in December. We accordingly reject this claim, along with DeWayne's newly raised claims on appeal about violations of the rules of electronic procedure. *See Heiar*, 954 N.W.2d at 469–70.

raise a due-process complaint at trial, and instead simply requested more time to submit an exhibit, we review the court's denial of his request for an abuse of discretion. *In re Marriage of Ihle*, 577 N.W.2d 64, 68 (Iowa Ct. App. 1998). Upon doing so, we find no abuse of the court's discretion for two reasons.

First, the district court was correct in telling DeWayne that "[t]oday was the day to come ready with everything," even as a self-represented litigant. *See In re Marriage of Krug*, No. 19-1577, 2020 WL 5229422, at *2 (Iowa Ct. App. Sept. 2, 2020) ("Trial is the time to present evidence. . . ."); *Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995) ("We do not utilize a deferential standard when persons choose to represent themselves."). "Failure to make one's case is not a reason to reverse the district court, which made a determination based on the evidence properly before it." *Krug*, 2020 WL 5229422, at *2.

Second, while it "would normally be essential for the district court to examine proffered [evidence] before deciding to grant or deny a request to present additional evidence, it is equally incumbent upon the party seeking additional time to present evidence to establish prejudice." *Ihle*, 577 N.W.2d at 69. DeWayne never identified the evidence that he wanted to present at trial, even after he retained an attorney to file a post-trial motion. He still doesn't on appeal. Because our courts do not presume prejudice when evidence is excluded from trial, we reject this assignment of error. *Id.* (concluding no prejudice resulted from trial court's exclusion of witnesses where the "trial court record fail[ed] to disclose the nature of the excluded testimony and its importance to the issues in the case").

## II.    Property Division

In June 2021, DeWayne and Tameka bought a home in Davenport for $251,893.  They made a down payment of roughly $26,000.  Tameka testified that she paid half of that amount from her funds, while DeWayne contended that he wrote a check for $30,000 from proceeds that he received from a life insurance policy after the death of his first wife.  By trial, the parties owed $205,770 on the home, which Tameka wanted to keep for herself and her four children from a prior relationship.  An appraisal valued the home at $330,000, but Tameka maintained that it was only worth $300,000 based on the sale price of a neighboring home.  DeWayne thought it was worth even more than the appraised value, although he did not give an exact amount.  The district court landed on a value of $325,000, leaving the parties with considerable equity in this asset.  But, according to Tameka, they were upside down on another asset—their RV.

The couple bought the RV in March 2022 for close to $84,000.  Tameka put $500 towards the initial deposit, while DeWayne paid $8000.  The couple put the RV and its loan in Tameka's name because DeWayne's credit was not good, and he was buying a truck for his transportation business.  Each blamed the other for the RV purchase at trial, and neither wanted it.  Tameka testified that she tried to sell the RV after the parties separated but only received one offer for $46,000, which she said "would leave me $30,000 in the hole."

The district court came up with a unique solution to balance the substantial equity in the parties' home with the significant amount they owed on the RV.  The court awarded the home to Tameka,

assuming she can refinance the property with a mortgage of no less than $285,000 within the next 90 days. The equity from the house will be held in trust by her attorney. If the home cannot be refinanced within 90 days the home will be sold and all equity from the sale will be placed in [Tameka's] attorney's trust. . . .

From the equity proceeds from the home the debt to the RV will be paid off and the RV will then be sold. All proceeds from the sale of the RV will be held by [Tameka's] attorney in trust. From those proceeds [DeWayne] shall be paid the initial $15,000 held in trust and then the remaining proceeds shall be split equally between the parties.

In response to DeWayne's post-trial motion seeking clarification of this division, the court explained:

The reason the ruling is written the way that it is was evidence was provided that the parties purchased an RV for which $80,000 was owed. The court found that even though the RV and debt involved with the RV only names [Tameka] the purchase was made by both parties and thus the debt should be shared by both parties.

[Tameka] was to refinance [the] home for at least $285,000. For example, if that left $95,000 paid to [Tameka] th[e]n that amount would go to [Tameka's] attorney's trust. Those proceeds would then be used to pay the entire RV debt. For the sake of this hypothetical let us say that is $80,000. That would leave $15,000 in [Tameka's] attorney trust account. Then the RV would be sold. Again, for the sake of hypothetical let's say it was sold for $54,000. Those proceeds would then go into [Tameka's] attorney trust account, meaning ($15,000 + $54,000 = $69,000). From that $69,000 in trust, $15,000 would first be paid to [DeWayne] and then the remaining $54,000 would be divided evenly.

DeWayne challenges the court's solution from two angles. First, he argues the court "erred in determining that the RV was marital property" and failing to acknowledge his $8000 contribution towards its purchase. And second, he contends the court "failed to provide a set amount of equity for DeWayne's contributions to the marital home while awarding Tameka an asset valued at $325,000." Upon our de novo review of the record, we find no inequity in how the court handled these assets. *See In re Marriage of McDermott*, 827 N.W.2d 671,

676 (Iowa 2013) (stating that although our review of dissolution proceedings is de novo, we "will disturb the district court's ruling only when there has been a failure to do equity" (cleaned up)).

Even though the RV was titled in Tameka's name only, it is subject to division in their divorce. *See* Iowa Code § 598.21(5) (2023) (directing the court to equitably divide "*all property*, except inherited property or gifts received or expected by one party" (emphasis added)); *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) ("[T]he statute makes no effort to include or exclude property from the divisible estate by such factors as the nature of the property of the parties, the method of acquisition, or the owner."). And DeWayne does not argue that he used inherited or gifted funds to make the $8000 down payment. So we find no reason that he should receive a credit for that amount—especially considering that Tameka continued to make the monthly payments on the RV by herself after the parties separated.

As for DeWayne's second challenge, he argues that the court failed to "provide any valuations for the property division" and this uncertainty about what he will receive from the home refinance and RV sale is "patently inequitable." He asks us to remand to the district court for "a careful accounting of all of the assets and liabilities at play in this matter," specifically highlighting the court's failure to value his "business assets or debts" and the household contents identified by Tameka in her proposed division of assets. We decline to do so.

"Iowa is an equitable division state." *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). "But, as we often say, equity is not always synonymous with an equal division or a precise percentage distribution." *In re*

*Marriage of Bjugan-Allen*, No. 21-0865, 2022 WL 17481846, at *2 (Iowa Ct. App. Dec. 7, 2022); *accord Hazen*, 778 N.W.2d at 59. "The determining factor is what is fair and equitable in each circumstance," which we evaluate with the guidance of the factors listed in Iowa Code section 598.21(5). *Hazen*, 778 N.W.2d at 59. The key factors here are the "length of the marriage" and the "property brought to the marriage by each party." Iowa Code § 598.21(5)(a), (b). While premarital ownership is just one factor among many to be considered in a fair distribution, in a short-term marriage like this one, "a party's claim to the premarital property owned by the other spouse is minimal." *Bjugan-Allen*, 2022 WL 17481846, at *2.

Aside from the home, RV, and a truck that DeWayne bought for his transportation business, most of the parties' property was premarital and each largely received what they brought into the marriage. *See In re Marriage of Hansen*, 886 N.W.2d 868, 873 (Iowa Ct. App. 2016) ("[I]t is often equitable to simply award the property to the party that brought it into the marriage."). The district court awarded DeWayne his business's truck (with a net value of $10,000) and bank accounts, while Tameka was awarded her individual bank accounts and a small 401(k) that her financial affidavit valued at $1500. Each party was assigned their individual credit card debt. According to the parties' financial affidavits, Tameka's credit card debt exceeded DeWayne's. She also owed over $50,000 in student loans, which the court ordered her to pay. Finally, the court adopted Tameka's proposed division of the parties' household contents, which she detailed in a four-page long list ranging from soup bowls, plates, pots, and pans to televisions, couches, refrigerators, and freezers. While DeWayne objected to

Tameka's proposed division at trial, he did not identify any items that he wanted to keep or propose a different division.

DeWayne is correct that the district court failed to value many of these low-dollar items. And we have "underscore[d] the importance of assigning values and setting forth the net property distributions in a dissolution decree." *In re Marriage of Hymbaugh*, No. 10-2026, 2011 WL 2696418, at *3 (Iowa Ct. App. July 13, 2011); *see also In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007) (stating the trial court must identify and value all the assets and debts of the parties "to assist the court in making equitable property awards and allowances" (citation omitted)). But we don't believe a remand is necessary because we are able to assess whether an equitable division of property was made from the record before us, which includes both parties' financial affidavits, their testimony, and Tameka's detailed exhibits.[2] *Cf. In re Marriage of Mrla*, No. 17-1029, 2018 WL 3057482, at *1 (Iowa Ct. App. June 20, 2018) (remanding where "we cannot exercise appellate review over the property division" because the parties identified many contested assets and liabilities at trial, but the court did not divide all the property or value any of it).

DeWayne's argument for a remand essentially requests "an alignment of 'each party's assets and debts in a balance sheet to determine an equalization payment.'" *Bjugan-Allen*, 2022 WL 17481846, at *3 (citation omitted). In other words, a do-over from what he sought at trial. "An equalization payment suggests each party should be awarded an equal amount of assets and liabilities." *Hansen*,

---

[2] This does not mean that we approve of the court's failure to specify its valuations, just that it does not inhibit our review in this particular case.

886 N.W.2d at 873. However, "to achieve equity, the division need not be equal in most short-term marriages." *Id.* Our focus is instead on what is equitable under the factors listed in section 598.21(5). *Id.* Having considered those factors, and DeWayne's arguments on appeal, we conclude the court's property division was equitable.

**AFFIRMED.**